OPINION
{¶ 1} Appellant, Jerry T., appeals the decision of the Butler County Court of Common Pleas, terminating his parental rights and granting permanent custody of his daughter, T.T., to the Butler County Children Services Board ("BCCSB").
 {¶ 2} Appellant is the biological father of three-year-old T.T., and has a parental relationship with five-year-old T.M.T., T.T.'s half sister, even though he is not her biological father. During the course of this proceeding appellant married the girls' mother, Sandra Hubbard, who is not a party to this appeal. Hubbard has a severe substance abuse problem, and in spite of participating in multiple rehabilitation programs over a period of years, has proved unable to maintain sobriety. While appellant does not abuse drugs or alcohol, he does enable Hubbard's behavior by providing money to buy drugs and alcohol and driving her to buy drugs. The children were removed from the home by BCCSB due to Hubbard's drug and alcohol abuse. Both children were adjudicated dependent and committed to the temporary custody of BCCSB, which placed them with foster families. The children have thrived in foster care and their respective foster families wish to adopt them.
 {¶ 3} BCCSB filed a motion seeking permanent custody of the children in July 2002. The motion was denied, and BCCSB filed a second motion for permanent custody in October 2002 after Hubbard relapsed and began abusing drugs and alcohol again. At a hearing on the motion, evidence was introduced regarding Hubbard's drug and alcohol dependency. While she was receiving treatment for her addictions at the time of the hearing, her treating physician, Dr. Ronald Arundel, testified that Hubbard's prognosis was "guarded." Testimony established that her longest period of sobriety lasted thirteen months, and that she had been sober for seven months at the time of the hearing after eight months of abusing drugs and alcohol. Dr. Arundel testified that, given her history of substance abuse, a two-year period of sobriety would be necessary before she could parent the children without court involvement.
 {¶ 4} Appellant completed several parenting courses and participated in several programs, including Alanon, an empowerment program for victims of domestic violence, and marriage counseling. However, appellant demonstrated little understanding of the effect that Hubbard's substance abuse has on the children. Hubbard will often leave for several days at a time until appellant locates her through police or hospital records. When Hubbard abuses drugs and alcohol at home, appellant will often simply stay in his car, leaving Hubbard to do as she pleases. He testified that if granted custody of the children he would "load up" the children and leave the residence when Hubbard was not sober. He testified that he would then leave the children in the care of unidentified friends. He also testified that he believed the children would not notice Hubbard's behavior "if people don't make a big deal about it." Testimony established that appellant fears Hubbard who has been physically violent toward him in the past. Appellant expressed fear that Hubbard might harm the children by throwing things at them. In spite of this tumultuous lifestyle, appellant is "not sure" what it would take for him to leave Hubbard, and indeed solemnized the relationship during the course of the proceeding by marrying her.
 {¶ 5} Appellant also failed to demonstrate an ability to care for the children. During visits with the children appellant often sat quietly while the children yelled, screamed, hit each other, threw food, and were otherwise unruly. Caseworkers had to intervene in the visits to maintain order. Appellant admits that the children are "rowdy" but feels that it is "out of his hands," and that four and five-year-old children are responsible for their own safety. Appellant fell asleep during two visits. In one instance, appellant came to visitation with Hubbard, in spite of the fact that Hubbard's visitation had been suspended and there was a no contact order.
 {¶ 6} Upon considering the evidence, the magistrate granted the motion for permanent custody. Appellant and the state filed objections which were overruled by the trial court. Appellant appeals raising five assignments of error.[1] The state cross-appeals raising a single assignment of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "The court erred as a matter of fact and law when it found by clear and convincing evidence that appellant's parental rights could and should be terminated even though Children's Services had failed to make reasonable efforts to reunite him and his child."
 {¶ 9} Appellant did not file an objection as to the magistrate's conclusion that permanent custody was proper in spite of finding that BCCSB failed to make reasonable efforts toward reunification between the denial of the first permanent custody motion and the filing of the second motion. Juv. R. 40(E)(3)(d) provides that a party "shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Failing to draw the trial court's attention to a possible error, by objection or otherwise, where the error could have been corrected, results in a waiver of the issue for purposes of appeal. In reEbenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 10} An exception to this waiver exists if plain error is found. Inre Etter (1998), 134 Ohio App.3d 484, 492; In re Alyssa C.,153 Ohio App.3d 10, 2003-Ohio-2673, ¶ 33-35; In re Dakota Hollin
(Mar. 26, 2001), Butler App. Nos. CA2000-05-088, CA2000-06-107. In a civil proceeding, plain error involves those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. See Goldfuss v.Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401.
 {¶ 11} Appellant argues the trial court erred in awarding BCCSB permanent custody of T.T. because it failed to make "reasonable efforts" to prevent her removal or to make it possible for her to return home with him, as he argues R.C. 2151.419 requires. We disagree with this argument. The "reasonable efforts" requirement of R.C. 2151.419(A)(1) applies to hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314,2151.33 or 2151.353. This court has held that, "by its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414," as occurred in the present matter. In re A.C., Clermont App. No. CA2004-05-041, 2004-Ohio-5531, ¶ 30.
 {¶ 12} Because BCCSB was not required to make reasonable efforts toward reunification, we find no error in the trial court's decision granting permanent custody in the absence of reasonable efforts. The assignment of error is overruled.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "The Court erred as a matter of fact and law and abused its discretion when it found that Appellant's children could not be placed with him within a reasonable time."
 {¶ 15} Assignment of Error No. 3:
 {¶ 16} "The Court erred as a matter of fact and law and abused its discretion when it found that permanent custody was in the children's best interests."
 {¶ 17} Assignment of Error No. 4:
 {¶ 18} "The Court erred as a matter of fact and law and abused its discretion when it terminated the parental rights of Appellant."
 {¶ 19} Assignment of Error No. 5:
 {¶ 20} "The Court's decision and order of permanent custody was against the manifest weight of the evidence and failed to meet the requisite clear and convincing standard."
 {¶ 21} Because appellant's second, third, fourth and fifth assignments of error raise related issues, we will address them together.
 {¶ 22} Before severing a parent's constitutionally protected liberty interest in the care and custody of his or her children, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer
(1982), 455 U.S. 745, 759, 769, 102 S.Ct. 1388. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. Appellate review of a trial court's decision finding clear and convincing evidence is limited to determining whether "sufficient credible evidence" exists to support the trial court's determination. Inre Ament (2001), 142 Ohio App.3d 302, 307; In re Starkey,150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16.
 {¶ 23} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the trial court must find that: 1) the grant of permanent custody to the agency is in the best interest of the children, utilizing, in part, the factors of R.C. 2151.414(D); and, 2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); In re Ebenschweiger, 2003-Ohio-5990 at ¶ 12.
 {¶ 24} In the present case, the juvenile court found that it was in the child's best interest to grant the motion for permanent custody, and that two of the R.C. 2151.414(B)(1) requisites were applicable. First, the trial court found that pursuant to R.C. 2151.414(B)(1)(a), the child could not be placed with either parent within a reasonable amount of time. And second, the trial court found that the child had been in the custody of BCCSB for more than 12 months of a consecutive 22-month period, satisfying R.C. 2151.414(B)(1)(d).
 {¶ 25} Under R.C. 2151.414(B)(1), when a child has been in temporary custody for at least 12 months of a consecutive 22-month period, a juvenile court is only required to find by clear and convincing evidence that permanent custody is in the child's best interest. In re L.D.,
Clinton App. No. CA2004-03-007, 2004-Ohio-4000, ¶ 14-15. The finding that the child has been in temporary custody for this period obviates consideration of whether the parents have remedied the conditions which caused the removal of the children, and whether the children could not, or should not be placed with the parents. Id., citing In re Nice,141 Ohio App.3d 445, 459, 2001-Ohio-3214.
 {¶ 26} In the present case, clear and convincing evidence established that T.T. was in the temporary custody of BCCSB for 12 or more months of a consecutive 22-month period. Consequently, even though the juvenile court addressed the fact that she could not be placed with appellant within a reasonable time or should not be placed with appellant, and, in doing so, discussed the question of reasonable efforts by the agency to reunify the family, it was unnecessary to the resolution of this case. See In re K.M., Butler App. No. CA2004-02-052, 2004-Ohio-4152, ¶ 51, citing Nice at 449. See, also, In re C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048, ¶ 2; In re Sarah S., Erie App. Nos. E-02-052, E-02-053, E-02-054, 2003-Ohio-4730, ¶ 13.
 {¶ 27} We are thus left to review whether there was clear and convincing evidence that granting the motion for permanent custody was in the child's best interest. R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} Viewing the facts of this case in light of the above factors, it is clear that, although appellant appears to love T.T., it remains in the child's best interest that BCCSB be granted permanent custody.
 {¶ 34} The crux of appellant's contention on appeal is that the trial court inappropriately considered evidence related to Hubbard's ability to parent when terminating his parental rights. He maintains that he is "ready, willing and able" to care for T.T. The flaw in this argument is that appellant is unwilling to leave Hubbard to protect T.T., and in this regard, Hubbard's ability to parent is highly relevant under the first factor cited above. If appellant is granted custody, T.T. will be living in a home with Hubbard, who has a long history of substance abuse and violent behavior detailed earlier. Appellant has enabled Hubbard's subtance abuse. Even at the time of the permanent custody hearing appellant testified that he would permit Hubbard to drive the children after consuming alcohol, depending on the amount. Appellant appears to have little understanding of the scope of Hubbard's addictions and the consequent affect on her ability to parent, and the family's ability to function.
 {¶ 35} With regard to the second factor, the guardian ad litem strongly advocated that the permanent custody motion be granted. The guardian noted Hubbard's long history of substance abuse and controlling behavior, and appellant's inability to protect T.T. from Hubbard's destructive behavior. He also noted that the child doesn't "have much of a relationship" with appellant, and expressed little optimism that the relationship would grow in the future.
 {¶ 36} With regard to the third and fourth factors, the trial court noted that T.T. has lived in the same foster home for nearly her entire three-year life. She regards her foster family as her family, and her foster parents would like to adopt her. T.T. needs a secure placement, which cannot be achieved with granting the permanent custody motion. Finally, none of the factors in R.C. 2151.414(E)(7)-(11) apply to appellant.
 {¶ 37} Upon thoroughly reviewing the record, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of T.T. to be permanently placed in the custody of BCCSB. The trial court made findings related to the applicable statutory factors set forth in R.C. 2141.414(D) and (E), which are supported by the evidence. Appellant's second, third, fourth and fifth assignments of error are overruled.
 {¶ 38} Cross-Assignment of Error:
 {¶ 39} "The trial court erred in determining that BCCSB had failed to make reasonable efforts to reunify appellant and his daughter."
 {¶ 40} Having concluded earlier in this opinion that consideration of the reasonable efforts toward reunification need not be considered because T.T. was in the temporary custody of BCCSB for 12 months out of a consecutive 22-month period, we find the state's cross-assignment of error is rendered moot.
 {¶ 41} Judgment affirmed.
Young and Valen, JJ., concur.
[1] While appellant's assignments of error relate to both children, we note that it is undisputed that appellant is not the biological or adoptive father of T.M.T. Consequently, appellant does not hold "any legally protectable interest" in T.M.T.'s care and custody. In re TammyM., Lucas App. No. L-02-1108, 2003-Ohio-492, ¶ 13, citing In Re Schmidt
(1986), 25 Ohio St.3d 331, 336. Although R.C. 2151.353 provides legal strangers with a procedural mechanism to seek custody of a child in a permanent custody proceeding, appellant did not file a motion pursuant to this section. Thus, we will consider appellant's assignments of error only as they relate to T.T.