IN RE C.F. ET AL.; CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, APPELLANT; FOSTER, APPELLEE.

[Cite as *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104.]

(No. 2006–0503—Submitted October 4, 2006—Decided March 28, 2007.)

LUNDBERG STRATTON, J.

{¶ 1} This matter comes to us on review of an order by the Eighth District Court of Appeals certifying a conflict. We determined that a conflict exists and ordered that the parties brief the following issues:

{¶ 2} 1. "Whether a reasonable efforts determination is required in motions for permanent custody filed pursuant to R.C. 2151.413."

{¶ 3} 2. "Whether a trial court abuses its discretion by denying a request for an in camera interview in a permanent custody determination when there is nothing in the record to indicate that having the children testify would have been detrimental to them or that they did not desire to testify."

{¶ 4} In response to the first question, we hold that, except for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must do so at the hearing on a motion for permanent custody. However, the specific requirement to make reasonable efforts that is set forth in R.C. 2151.419(A)(1) does not apply in an R.C. 2151.413 motion for permanent custody.

{¶ 5} We answer no in response to the second question. R.C. 2151.414(D)(2) requires that the court consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." The statute does not also require that the trial court consider whether the parent wants the child to be heard, whether the child wishes to speak, or whether testifying would be detrimental to the child.

{¶ 6} Applying these principles to this case, we reverse the judgment of the court of appeals.

## Facts and Procedural History

{¶ 7} Deborah Ness and appellee, Wayne Foster, are the biological parents of C.F. (born March 3, 1994) and S.F. (born July 10, 1996). On October 7, 2002, the appellant, Cuyahoga County Department of Children and Family Services ("CCDCFS"), filed a complaint alleging that C.F. and S.F. were neglected children. The complaint alleged that the mother had a history with both CCDCFS and Nevada Family Service authorities of domestic violence and alcohol abuse and that she had fled authorities in Nevada with her children and returned to Ohio. The complaint also alleged that the mother's alcohol abuse impaired her

ability to care for the children and that the father was terminally ill with cirrhosis of the liver. CCDCFS moved for predispositional temporary custody pursuant to R.C. 2151.33(B)(1)(a) and (b) and Juv.R. 13(B)(2)(b) and (c).

{¶ 8} On October 9, 2002, a magistrate ordered the children committed to the emergency care and custody of CCDCFS. The magistrate concluded that the agency had probable cause to remove the children from the home pursuant to R.C. 2151.31(A)(3)(b),[1] and that before removing them, it had made reasonable efforts pursuant to R.C. 2151.419 to prevent their removal from the home, to eliminate the need for their continued removal, or to make it possible for them to return home.

{¶ 9} The agency prepared and filed a case plan to reunify the children with both parents. The plan included finding stable housing, counseling to prevent domestic violence, and teaching parenting skills. The magistrate excused the father from participating in the counseling because of his health.

{¶ 10} On January 15, 2003, the court adjudged the children to be neglected and committed them to the temporary custody of CCDCFS. Both parents attended the adjudication hearing.

{¶ 11} Beginning in March 2003, the agency began to plan to reunify the children with their father. He appeared at a court hearing and represented that the mother had previously given the court inaccurate information about him. As a result, on April 21, 2003, the court approved an amended case plan to focus on reunification with the father. The court noted that the mother had failed to comply with the case plan. The court ordered that the father was not to allow the mother to participate in the children's visits with their father.

{¶ 12} The agency began to accelerate the father's visitation with the children and arranged for him to become more involved with the children's schedules and with the foster parents with the goal of reunification by June 21, 2003. In June 2003, a domestic-violence incident allegedly occurred between the parents in the presence of the children. This caused the agency to interrupt reunification efforts with Foster. Instead, the agency offered alcohol and drug assessment and treatment to him. However, Foster was soon incarcerated for domestic violence and was not in touch with the agency for several months.

{¶ 13} On October 2, 2003, CCDCFS filed a motion pursuant to R.C. 2151.413 to modify temporary custody to permanent custody. CCDCFS attached an

---

1. A law-enforcement officer or authorized officer of the court may take a child into custody if there are reasonable grounds to believe that the child is in immediate danger and that removal is necessary to prevent immediate or threatened physical or emotional harm, or reasonable grounds to believe that a parent has abused or neglected another child in the household and that the child is in danger of immediate or threatened physical or emotional harm. R.C. 2151.31(A)(3)(b) and (c).

affidavit from Pam Cameron, CCDCFS social service supervisor, who stated that the children could not or should not be placed with either parent within a reasonable period of time and that it would be in the best interest of the children to award permanent custody to CCDCFS. Cameron also stated that CCDCFS had made reasonable efforts to reunify the family by attempting to assist the parents in completing their case plans, by making referrals for services, and by facilitating a visitation schedule.

{¶ 14} The agency conducted a semiannual case review on December 1, 2003, and filed an amended case plan with the court on January 20, 2004. The sobriety of both parents was a concern of the agency. The report from the review documented Foster's lapse in June and his participation in Alcoholics Anonymous meetings in October and November 2003. The report also reflected that Foster had obtained permanent housing. The report documented the mother's completion of parenting classes and her failure to get treated for substance abuse.

{¶ 15} In August 2004, the court conducted a hearing on the motion to modify temporary custody to permanent custody. The mother voluntarily relinquished her parental rights and consented to permanent custody to CCDCFS. The court acknowledged that the parents were now divorced. The case proceeded as to the father's parental rights.

{¶ 16} Following the hearing, the trial court concluded that the agency had proven by clear and convincing evidence that permanent custody was in the children's best interest and that the children could not and should not be placed with either parent within a reasonable time. The court ordered permanent custody of C.F. and S.F. to CCDCFS.

{¶ 17} Foster appealed the decision to the Eighth District Court of Appeals. The appellate court concluded that the trial court had abused its discretion in concluding that CCDCFS had used reasonable efforts to reunify the children with their father and in not allowing the children to testify. The appellate court reversed the grant of permanent custody and remanded the cause to the trial court.

{¶ 18} The court of appeals also certified a conflict as to the first issue between its decision and *In re Stevens* (July 16, 1993), Montgomery App. No. 13523, 1993 WL 265130; *In re Lawson/Reid Children* (Apr. 18, 1997), Clark App. No. 96–CA–0010, 1997 WL 189379; *In re Cook*, Seneca App. No. 13–02–29, 2003-Ohio-868, 2003 WL 548484; *In re Efaw* (Apr. 21, 1998), Athens App. No. 97CA49, 1998 WL 224905; *In re Leitwein*, Hocking App. No. 03CA18, 2004-Ohio-1296, 2004 WL 540925; *In re Guisinger* (May 31, 1994), Stark App. No. CA 9478, 1994 WL 249814; *In re Elliott*, Jefferson App. Nos. 03JE30 and 03JE33, 2004-Ohio-388, 2004 WL 187413; *In re C.W.*, Summit App. No. 22820, 2005-Ohio-6739, 2005 WL 3482005; *In re Moore* (Dec. 15, 1999), Summit App. No. 19217, 1999 WL 1215294;

*In re S.S.*, Franklin App. No. 05AP–204, 2005-Ohio-4282, 2005 WL 1983963; *In re S.P.*, Butler App. No. CA2004–10–255, 2005-Ohio-1079, 2005 WL 578976; *In re A.C.*, Clermont App. No. CA2004–05–041, 2004-Ohio-5531, 2004 WL 2340127; and *In re T.T.*, Butler App. Nos. CA2004–07–175 and CA2004–08–198, 2005-Ohio-240, 2005 WL 123948.

{¶ 19} As to the second issue, the appellate court certified the following cases as being in conflict with its decision: *In re Beresh Children*, Stark App. No. 2003CA00089, 2003-Ohio-4898, 2003 WL 22128799; *In re Sunderman/Daniels Children*, Stark App. No. 2004CA00093, 2004-Ohio-4608, 2004 WL 1941061; *In re D.M.*, Summit App. Nos. 22732 and 22749, 2005-Ohio-6740, 2005 WL 3481515; and *In re Funk*, Portage App. Nos. 2002–P–0035 and 2002–P–0036, 2002-Ohio-4958, 2002 WL 31107531. See 109 Ohio St.3d 1453, 2006-Ohio-2226, 847 N.E.2d 3.

## Issue One

{¶ 20} *"Whether a reasonable efforts determination is required in motions for permanent custody filed pursuant to R.C. 2151.413."*

{¶ 21} Because of the broad scope of this question and because it does not directly address the more narrow conflict presented in the conflict cases, we must qualify our answer. Based on the constitutional implications of terminating parental rights and the importance of requiring reasonable reunification efforts that pervades federal and Ohio law, we hold that, except for a few narrowly defined exceptions, the state must have made reasonable efforts to reunify the family prior to the termination of parental rights. The question that we must also address, however, is whether, pursuant to R.C. 2151.419, the court must make a determination that such reasonable efforts have been made at the time it decides a motion for permanent custody filed pursuant to R.C. 2151.413.

### A. *Motion for Permanent Custody pursuant to R.C. 2151.413*

{¶ 22} A public or private child-placement agency may file a motion under R.C. 2151.413(A) to request permanent custody of a child after a court has committed the child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2). Once an agency has filed the motion, "R.C. 2151.414 sets forth the procedures a juvenile court must follow and the findings it must make before granting a motion filed pursuant to R.C. 2151.413." *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 9.

{¶ 23} The court must notify the parties of the motion and must hold a hearing. R.C. 2151.414(A)(1). Subsection (B)(1) establishes the test for a juvenile court to apply in ruling on a motion for permanent custody. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 31. It provides that a trial court may grant permanent custody of a child to an agency if the court determines, by

clear and convincing evidence, that it is in the child's best interest and that one of the following conditions applies:

{¶ 24} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 25} "(b) The child is abandoned.

{¶ 26} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶ 27} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).

## B. Reasonable Efforts to Preserve and Reunify Existing Families

{¶ 28} The right to parent one's children is a fundamental right. *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49; *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. However, government has broad authority to intervene to protect children from abuse and neglect. R.C. 2151.01. When the state intervenes to protect a child's health or safety, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called 'reasonable efforts.'" Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub. Int.L.J. 259, 260.

{¶ 29} No one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)—the "12 months out of 22" rule—"[i]f reasonable efforts to return the child to the child's home are required under section 2151.419" and the agency has not provided the services required by

the case plan. See, also, R.C. 2151.414(E)(1) (child may be placed with agency when, notwithstanding reasonable case planning and diligent efforts by the agency, parents fail to remedy problems that caused removal of child); and R.C. 2151.419 ("The agency shall have the burden of proving that it has made [the required] reasonable efforts" to prevent the child's removal or to return the child).

{¶ 30} Ohio's Department of Job and Family Services has promulgated regulations that describe reasonable efforts in great detail. Ohio Adm.Code 5101:2–39–05. In addition, the Ohio Rules of Juvenile Procedure require that "[i]n any proceeding involving abuse, neglect, or dependency at which the court removes a child from the child's home or continues the removal of a child from the child's home, * * * the court shall determine whether the person who filed the complaint in the case and removed the child from the child's home * * * has made reasonable efforts to do any of the following:

{¶ 31} "(a) Prevent the removal of the child from the child's home;

{¶ 32} "(b) Eliminate the continued removal of the child from the child's home;

{¶ 33} "(c) Make it possible for the child to return home." Juv.R. 27(B)(1).

{¶ 34} Under certain circumstances, the law dispenses with the duty to make reasonable efforts to reunify the family. Under R.C. 2151.419(A)(2), the agency need not make reasonable efforts if the parent from whom the child was removed has been convicted of or pleaded guilty to certain criminal offenses, has repeatedly withheld medical treatment or food from the child, has placed the child at substantial risk on more than one occasion because of alcohol or drug abuse, has abandoned the child, or has had parental rights involuntarily terminated with respect to a sibling of the child at issue.

{¶ 35} Federal law similarly directs states to make reasonable efforts to preserve and reunify families except under certain enumerated circumstances. See Section 671(a)(15), Title 42, U.S.Code.

### C. Conflict Cases

{¶ 36} The issue presented in the conflict cases is whether the trial court must make an R.C. 2151.419 "reasonable efforts" determination when the agency has filed a motion under R.C. 2151.413 seeking permanent custody. R.C. 2151.419 states:

{¶ 37} "(A)(1) Except as provided in division (A)(2) of this section, *at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353* of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services

agency or private child placing agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts." [2] (Emphasis added.)

{¶ 38} Some appellate courts have held that the agency must satisfy the R.C. 2151.419 reasonable-efforts requirement at the permanent-custody hearing. *In re Efaw,* supra, Athens App. No. 97CA49, 1998 WL 224905; *In re Lawson/Reid Children,* supra, Clark App. No. 96–CA–0010, 1997 WL 189379. Other appellate courts have held that R.C. 2151.419 does not apply in an R.C. 2151.414 permanent-custody hearing. *In re T.T.,* supra, 2005-Ohio-240, 2005 WL 123948; *In re A.C.,* supra, 2004-Ohio-5531, 2004 WL 2340127; *In re Bradley,* Allen App. No. 1–05–56, 2006-Ohio-2367, 2006 WL 1312074.

{¶ 39} A further complication here is that the Eighth District Court of Appeals has itself issued an opinion that conflicts with the case sub judice on this issue. See *In re Z.Y.,* Cuyahoga App. No. 86293, 2006-Ohio-300, 2006 WL 199012. In *Z.Y.,* the court adjudicated two children neglected and dependent and awarded temporary custody to the county agency. The trial court eventually modified temporary custody to an order of permanent custody to the agency. On appeal, the father of Z.Y. and Y.Y. argued that, pursuant to R.C. 2151.419(A)(1), the trial court erred when it determined that the agency had made reasonable efforts to reunify the family. The *Z.Y.* court rejected this argument, explaining that R.C. 2151.419 applies only to hearings enumerated in the statute and does not apply to a motion for permanent custody filed under R.C. 2151.413. Id. at ¶ 20.

{¶ 40} In the instant case, Foster made the same argument to a different panel, which reached the opposite result. Thus, *Z.Y.* is in conflict with the appellate opinion in this case. We have held that our "procedure for certified conflicts does not apply to conflicts within an appellate district, Section 3(B)(4), Article IV, Ohio Constitution, and such conflicts should be resolved through en banc proceedings." *In re J.J.,* 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 18. In future cases, appellate courts should resolve internal conflicts through en banc proceedings before initiating a procedure to certify a conflict between districts.

{¶ 41} While these cases present conflicting views on the applicability of R.C. 2151.419 in a permanent-custody hearing, we do not see that issue as determinative of this case or of the certified-conflict issues. By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314,

---

2. Subsection (A)(2) identifies a number of situations in which the agency need not make reasonable efforts to keep the child in the home or to return the child to the home.

2151.33, or 2151.353. See R.C. 2151.419(A)(1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, "[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re A.C.*, supra, 2004-Ohio-5531, 2004 WL 2340127, ¶ 30.

{¶ 42} This does not mean that the agency is relieved of the duty to make reasonable efforts. At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody.

{¶ 43} Therefore, we hold that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.

{¶ 44} When Wayne Foster appealed the termination of his parental rights to the Eighth District Court of Appeals, he alleged that because CCDCFS had failed to make reasonable efforts to reunify his children with him, the court should not have granted permanent custody to CCDCFS. The appellate court agreed. The court concluded that there had been no case plan in effect for Foster when CCDCFS was trying to reunify the children with him.

{¶ 45} However, the record reflects that the trial court made reasonable-efforts findings when the Foster children were committed to the emergency custody of the agency and when they were adjudicated neglected and committed to the temporary custody of the agency. The court again made reasonable-efforts findings in April 2003 when it amended the case plan to accelerate reunification with Foster. On September 30, 2003, the court again concluded that the agency had made reasonable efforts despite the mother's failure to comply, the father's continued drinking, and the incidents of domestic violence.

{¶ 46} At the permanent-custody hearing, Pamela Cameron, the social services supervisor, testified that the case plans included both parents. Ms. Cameron testified that the agency looked to reunify the children with their father in June 2003 but another domestic-violence incident had occurred that halted their progress.

{¶ 47} Jeff Konkoly, the social worker on the case, testified that the agency referred Foster for substance-abuse assessment, parenting classes, and assistance for domestic violence in late 2003 and early 2004. Mr. Konkoly testified that, although the agency was seeking permanent custody at the time, reunification of the family is always possible.

{¶ 48} The trial court decided that there was clear and convincing evidence that "[f]ollowing the placement of the children outside of the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1)." Based on the evidence, we cannot say that the trial court abused its discretion when it concluded that "notwithstanding reasonable case planning and diligent efforts by the agency," the children could not or should not be placed with either parent within a reasonable time, granting permanent custody to CCDCFS.

{¶ 49} In addition, the trial court made two additional findings under R.C. 2151.414(E): First, "[t]he parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so. * * * R.C. 2151.414(E)(4)." Second, the "[m]other and father suffer from chronic chemical dependencies that are so severe that they are unable to provide an adequate, permanent home for the children at the present time, and as anticipated, within one year after the Court's hearing on CCDCFS' motion. * * * R.C. 2151.414(E)(2)."

{¶ 50} We find that any one of these factors would have been sufficient grounds for the trial court to determine that the Foster children could not be placed with either parent within a reasonable time. The court only needed to find that one factor applied to support its holding. R.C. 2151.414(E); *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus. Therefore, the trial court satisfied the requirements of R.C. 2151.414(E).

## Issue Two

{¶ 51} *"Whether a trial court abuses its discretion by denying a request for an in camera interview in a permanent custody determination when there is*

*nothing in the record to indicate that having the children testify would have been detrimental to them or that they did not desire to testify."*

{¶ 52} R.C. 2151.414(D) sets forth the factors for the court to consider when determining the best interest of the child. One of the statutory factors is "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(2).

{¶ 53} Foster had requested that the court conduct an in camera interview of his children. The trial court denied his request and instead relied on the testimony of the guardian ad litem, Mr. Hartman. The court of appeals concluded that the trial court had abused its discretion by not giving the children the opportunity to express their desires directly.

{¶ 54} This holding is contrary to the conflict cases in which courts in the 5th, 9th, and 11th districts ruled that a trial court does not abuse its discretion when it considers the guardian ad litem's testimony regarding the wishes of the children rather than the wishes as expressed directly by the children. These courts reasoned that R.C. 2151.414(D)(2) gives the juvenile court the option to consider either the children's desires directly or through the child's guardian ad litem. See *In re Beresh Children,* supra, 2003-Ohio-4898, 2003 WL 22128799, ¶ 33 ("we are unpersuaded that the lack of an in camera interview of the two children constituted an abuse of discretion or reversible due process error in this case"); *In re Sunderman/Daniels Children,* supra, 2004-Ohio-4608, 2004 WL 1941061, ¶ 44–45 ("the guardian ad litem clearly indicated the children's wishes to return to their mother. * * * [W]e are unpersuaded that the trial court violated appellant's due process rights when it denied appellant's request to call her child as a witness"); *In re Funk,* supra, 2002-Ohio-4958, 2002 WL 31107531, ¶ 30 ("a juvenile court has the option of either having the child assert his or her opinion [or] rely[ing] upon the guardian ad litem's representations with respect to the child's desires").

{¶ 55} We agree with the conflict cases. The statute unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem. Therefore, our answer to the second certified-conflict question is no. When determining the wishes of the child, a court is required by R.C. 2151.414(D)(2) to consider the wishes of the child, "as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." The statute does not impose the additional require-ment that the trial court also consider whether the children want to testify or whether testifying would be detrimental to them.

{¶ 56} The trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct expression of those wishes

made by the child. The trial court should not be overruled absent a showing that the court acted in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140 (defining "abuse of discretion"). In this case, both the guardian ad litem and the children's psychologist testified as to the wishes of the children. The guardian ad litem and the children's counsel objected to the children appearing in court. The court of appeals lacked authority to place a heightened significance upon the direct testimony of the children and infer that a trial court must require the children to testify when a parent requests it unless it is shown to be detrimental. R.C. 2151.414(D)(2) creates no such standard. "[W]e cannot override unambiguous statutory language" and establish additional burdens not required by law. *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 32.

{¶ 57} In a best-interests analysis under R.C. 2151.414(D), a court must consider "all relevant factors," including five enumerated statutory factors, one of which is the wishes of the child. No one element is given greater weight or heightened significance. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 58} We find that the trial court satisfied its statutory duty under R.C. 2151.414(D) and properly exercised its discretion to consider the wishes of the children expressed through their guardian ad litem. R.C. 2151.414(D)(2). The appellate court improperly substituted its judgment for that of the trial court and imposed a standard not required by law.

{¶ 59} For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., BRESSLER, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

H.J. BRESSLER, J., of the Twelfth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

───────────

**PFEIFER, J., dissenting.**

{¶ 60} I dissent from both of the majority's holdings. First, before awarding permanent custody to a children services agency pursuant to R.C. 2151.413, trial courts should determine on the record that the agency has made reasonable efforts at reunification. Second, R.C. 2151.414(D)(2) allows an appellate court to

find that a trial court abused its discretion in failing to solicit direct testimony from children involved in a permanent-custody hearing.

I

{¶ 61} As the majority recognizes, "[t]he right to parent one's children is a fundamental right." ¶ 28, citing *Troxel v. Granville* (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. That statement is not a trifle. If a statute assaults a fundamental right, it is the statute that falls, not the right. We do not look to statutes to define a parent's fundamental rights; we review statutes to ensure that they do not infringe on those rights.

{¶ 62} The General Assembly has recognized the primacy of the right of parents to raise their children, stating that R.C. Chapter 2151 "shall be liberally interpreted and construed so as to effectuate the following purposes:

{¶ 63} "(A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01.

{¶ 64} For the most part, R.C. Chapter 2151 does require a children services agency to make reasonable efforts to maintain the relationship between parents and their children. In instances where a court's orders are temporary or where the normal process is truncated, R.C. 2151.419 specifically requires the court to determine whether reasonable efforts were made to maintain the familial relationship. In other instances, such as in R.C. 2151.414(E)(1), the exact wording "reasonable efforts" is missing, but the requirement of a reasonable effort is still implicit in the statutory language. R.C. 2151.414(E)(1) requires "reasonable case planning and diligent efforts by the agency to assist the parents" as part of a determination of whether the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.

{¶ 65} That requirement of reasonable efforts embedded in R.C. 2151.414(E)(1) was found lacking in this case by the appellate court. The appellate court did not seek to impose a catchall reasonable-efforts requirement in all permanent-custody hearings—it was merely determining that the reasonable effort required by R.C. 2151.414(E)(1) was lacking in this case because the agency initiated permanent-custody proceedings before it had even developed a case plan for Foster. The appellate court was treading no new ground—it only found that the trial court had abused its discretion in its R.C. 2151.414(E)(1) determination. This case merely presents a disagreement between the appellate court and the trial court as to whether the statute's requirements were met. There is no conflict between

appellate districts as to whether R.C. 2151.414(E)(1) requires reasonable efforts on behalf of the children services agency. Since this case does not present a conflict between districts, we improvidently certified a conflict.

{¶ 66} Still, the majority trudges forward as if there were a conflict, setting out to determine whether the reasonable-efforts requirement of R.C. 2151.419, a statute never mentioned in the appellate court's decision, applies to hearings brought pursuant to RC. 2151.413. The majority determines that R.C. 2151.419 does not apply to the hearing at issue but holds that reasonable efforts at reunification should be employed by children services agencies anyway. However, the majority does not require the trial court making the permanent-custody determination to find on the record that the state made such reasonable efforts.

{¶ 67} Further, in regard to R.C. 2151.414(E)(2) and (4), the court implies that no reasonable-efforts determination is required at all. The majority notes that besides its R.C. 2151.414(E)(1) finding, the trial court also rested its decision that the children could not or should not be returned to their parents in this case on two statutory factors that the appellate court did not address. The trial court determined that "[t]he parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit or communicate with the children when able to do so," a factor establishing that the children cannot or should not be placed with the parents pursuant to R.C. 2151.414(E)(4). Also, the court found that the "[m]other and father suffer from chronic chemical dependencies that are so severe that they are unable to provide an adequate, permanent home for the children at the present time, and as anticipated, within one year after the Court's hearing * * *." See R.C. 2151.414(E)(2).

{¶ 68} Neither of those R.C. 2151.414(E) factors either explicitly or implicitly requires that the agency make reasonable efforts to reunify the family. The majority seemingly finds that not to be a problem, after spending much time in the early part of the opinion determining that agencies should make reasonable efforts at reunification.

{¶ 69} The majority opinion thus allows a piecemeal application of a reasonable-efforts standard, requiring between-the-lines reading of individual statutes to determine where the requirement applies and where it does not. That method provides neither an efficient nor a sure way to protect the rights of parents and the safety of children.

{¶ 70} This court can guarantee that the fundamental right of parents is not terminated without due process by requiring courts to find by clear and convincing evidence that the state has made reasonable efforts to reunite parent and child or that such efforts would have been futile. No, that determination is not required by statute in all cases. But the fundamental right of parents to raise their children is not the creation of statute. Parents must rely on courts to

ensure the protection of their fundamental rights from encroachment by the legislative and executive branches. The Second District Court of Appeals has been a leader in that regard, requiring trial courts to make a specific determination that the state has made reasonable efforts at reunification:

{¶ 71} "The reasonable efforts requirement contained in R.C. 2151.419(A) * * * is not expressly included in the two part test provided by R.C. 2151.414(B). Rather, the requirement that before permanently divesting a parent of her rights, the court must also make a finding that reasonable efforts at reunification have been made or would be futile is a recent, judicially engrafted one. See *In re Stevens* [(July 16, 1993), 2d Dist. No. 13523, 1993 WL 265130]. * * *

{¶ 72} " * * *

{¶ 73} " * * * R.C. 2151.419, which requires that a court determine whether reasonable efforts have been made to prevent removal of a child from his home, also requires the court to issue *written findings of facts* 'setting forth its determination * * * [and] briefly describ[ing] the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home.' R.C. 2151.419(B). In *Stevens, supra,* we held that although a 'motion for permanent custody under R.C. 2151.413 does not expressly invoke the reasonable efforts requirement of R.C. 2151.419(A),' a court must nevertheless determine that reasonable efforts at reunification were made or that such efforts would have been futile. Although we did not specifically hold that a court must also comply with R.C. 2151.419(B)'s requirement of written findings of fact regarding those reasonable efforts, we do so now." (Emphasis sic.) *In re Lawson/Reid Children* (April 18, 1997), 2d Dist. No. 96–CA–0010, 1997 WL 189379.

{¶ 74} This court, too, should impose a requirement that in all permanent-custody hearings the trial court should prepare written findings of fact establishing that the children services agency made reasonable efforts at reunification or that such efforts would have been futile. That requirement would protect a parent's fundamental right to raise his or her child with due regard to the safety of the child.

## II

{¶ 75} This court should also take the lead in requiring trial courts to hear direct testimony from children in permanent-custody cases whenever possible. The children in this case, eight and ten years of age, were old enough to express their own desires. The majority opinion blesses the all-too-common practice in custody proceedings of shielding children from judges. Or perhaps it is the judges who are being shielded from the children. Testimony from children can

be emotional, painful, or awkward; a guardian ad litem can serve as a filter for the trial judge. Guardians ad litem are appointed by probate courts, and it is a simple fact of human nature that guardians ad litem are going to do what they can to make the probate judge's job easier. But a guardian ad litem does not exist to insulate his benefactor judge; he exists to represent the child's interest. R.C. 2151.281. When able, children must be allowed to express their interests as to custody. For R.C. 2151.414(D)(2) to have meaning, and for children's and parents' rights to be adequately considered, this court cannot allow the de facto delegation of all children's testimony to guardians ad litem. Appellate courts, where appropriate, must have the power to find that an abuse of discretion occurs where, as here, the guardian ad litem is unclear about the children's wishes.

{¶ 76} Accordingly, I respectfully dissent.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellant Cuyahoga County Department of Children and Family Services.

Robert L. Tobik, Cuyahoga County Public Defender, and Cullen Sweeney and John T. Martin, Assistant Public Defenders, for appellee Wayne Foster.

Katherine Hunt Federle and Jason A. Macke, urging affirmance for amicus curiae, Justice for Children Project.