OPINION
{¶ 1} The father and mother of a minor child, D.D. aka A.D., separately appeal the decision of the Clinton County Court of Common Pleas, Juvenile Division, to grant permanent custody of their child to Clinton County Children's Services ("CCCS").
 {¶ 2} D.D., born August 21, 2003, was removed from his parents' custody and placed into the custody of CCCS on June 14, 2005 because the parents and child were homeless *Page 2 
and residing in an automobile. D.D. was adjudicated by agreement as a dependent child. In disposition, the trial ordered CCCS to retain temporary custody and adopted the case plan filed in the case. The case plan called for the parents to obtain and maintain stable employment and housing so that they could provide for the needs of the child.
 {¶ 3} CCCS filed a motion for permanent custody in August 2006, and a permanent custody hearing was held in January 2007 and continued to a date in February. The trial court subsequently issued its decision granting permanent custody of the child to CCCS.
 {¶ 4} As previously stated, the father and mother both filed separate appeals. We will address first the single assignment of error set forth by father in his appeal in Case No. CA2007-04-026.
 Father's Appeal {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE DISPOSITION MUST BE OVERTURNED AS BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR BECAUSE INSUFFICIENT EVIDENCE WAS PRESENTED TO SUSTAIN A FINDING BY CLEAR AND CONVINCING EVIDENCE THAT HE [SIC] CHILD COULD NOT BE REUNIFIED WITH THE PARENTS WITHIN A REASONABLE PERIOD OF TIME[.]"
 {¶ 7} Before severing a parent's constitutionally protected liberty interest in the care and custody of his or her children, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer
(1982), 455 U.S. 745, 759, 769, 102 S.Ct. 1388; In re T.T., Butler App. Nos. CA2004-07-175, CA2004-08-198. 2005-Ohio-240, ¶ 22.
 {¶ 8} Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. Appellate review of a trial *Page 3 
court's decision finding clear and convincing evidence is limited to determining whether there is "sufficient credible evidence" before it to satisfy the requisite degree of proof. In re Wingo, 143 Ohio App.3d 652,660, 2001-Ohio-2477; In re Ament (2001), 142 Ohio App.3d 302, 307. An appellate court should not substitute its judgment for that of the trial court when competent credible evidence going to all essential elements of the case exist. Wingo; see Jones v. Lucas Cty. Children Serv.Bd. (1988), 46 Ohio App.3d 85, 86.
 {¶ 9} R.C. 2151.414(B) requires the trial court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the trial court must find that: (1) the grant of permanent custody to the agency is in the best interest of the children, utilizing, in part, the factors of R.C.2151.414(D); and, (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C.2151.414(B)(1)(a), (b), (c) and (d); In re T.T., at ¶ 23.
 {¶ 10} CCCS filed a motion for permanent custody pursuant to R.C.2151.413(D)(1), which states that if a child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child.
 {¶ 11} According to R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d), a child is considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to R.C.2151.28 or the date that is 60 days after the removal of the child from home. See, generally, In re Meadows, Warren App. No. CA2001-11-096, 2002-Ohio-3168.
 {¶ 12} The trial court determined that D.D. had been in the temporary custody of CCCS for 12 or more months of a consecutive 22-month period. We note that father *Page 4 
acknowledged and did not contest that D.D. was in the temporary custody of CCCS for 12 or more months of a consecutive 22-month period. We find the record supports the trial court's finding.
 {¶ 13} After the trial court made the finding that D.D. was in temporary custody for 12 or more months of a consecutive 22-month period, the trial court was only required to find by clear and convincing evidence that permanent custody is in the child's best interest. In re L.D., Clinton App. No. CA2004-03-007, 2004-Ohio-4000, ¶ 14-15; In re Nice, 141 Ohio App.3d 445, 459, 2001-Ohio-3214;Antonio C. and Angelica C, Sandusky App. Nos. S-03-011, S-03-012,2004-Ohio-82, at ¶ 52.
 {¶ 14} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, the trial court shall consider all relevant factors, including, but not limited to the following:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." *Page 5 
 {¶ 20} In its decision, the trial court reviewed the best interest factors listed in the statute and found additional facts pertinent to its best interest determination.
 {¶ 21} The trial court noted that the child was not of sufficient maturity to express his wishes, but the child's guardian ad litem ("GAL") recommended permanent custody to CCCS.
 {¶ 22} The trial court outlined the testimony regarding the parents' visits with the child. A CCCS caseworker noted that the parents had limited verbal interaction with D.D. during the visits she observed. The parents reportedly attended 100 of 166 scheduled visits.
 {¶ 23} The trial court heard evidence of the parents' inability to maintain employment and stable housing. The parents reportedly changed locations where they were living approximately 12 times since the child was placed in CCCS' temporary custody. With some of those changes, the parents would move from one place to another for a day, a weekend, or a week, until they found someone or some other organization to house or assist them. At the time of the hearings, the parents had been in the same apartment for several weeks. The caseworker informed the trial court that the parents were currently sleeping on couches in the living area, and those arrangements would have to be reconfigured to accommodate D.D.
 {¶ 24} Father argues that he maintained the same address for almost a year from mid-2005 to mid-2006. The residence to which father is referring was reportedly in need of repair and cleaning when the parents took occupancy, but the caseworker said the parents told her they agreed to make the needed repairs in exchange for one free month of rent and no deposit. A charitable organization paid the second month's rent. According to the caseworker, the parents never made a rent payment for this residence. The parents continued to stay at the rental property after their utilities were terminated and until evicted.
 {¶ 25} The parents also struggled with the requirement to obtain and maintain employment during the same time period. The parents would obtain a job, but their tenure *Page 6 
would end when they quit, were fired, or in some instances, laid off.
 {¶ 26} The caseworker testified that the parents informed her that one job opportunity ended on their first day when the parents refused to take a drug screen as a prerequisite to employment. The father told the caseworker that he knew he would not be able to pass the drug screen.
 {¶ 27} The parents were reportedly employed at a restaurant for several weeks by the time of the January hearing date, but the restaurant closed down without notice before the hearing reconvened in February.
 {¶ 28} In addition, CCCS presented evidence that it was involved with the mother and two of her other children in 2002 because the family was then homeless. Those two children were eventually placed in the legal custody of a relative.
 {¶ 29} The CCCS caseworker informed the trial court that no relatives had come forward during the pendency of this case to obtain custody of D. D. The trial court found that the child had been with the same foster family since his removal in June 2005.
 {¶ 30} According to the trial court, the parents' history indicated that they could not provide a stable home and environment for D.D. in the reasonably foreseeable future. The trial court found that D.D. needed a legally secure permanent placement and that this legally secure permanent placement could not "be assured without a grant of permanent custody to CCCS."
 {¶ 31} Upon review of the record, we find that the requisite amount of evidence exists in the record to support the trial court's finding that permanent custody was in the child's best interest. Having found that the record supports the trial court's findings on the two-part test for permanent custody, father's single assignment of error is overruled. *Page 7 
 Mother's Appeal {¶ 32} In Case No. CA2007-04-024, mother's appellate counsel filed a brief pursuant to Anders v. State of California (1967), 386 U.S. 738,87 S. Ct. 1396, which: (1) indicates that a careful review of the record from the proceedings below fails to disclose any errors by the trial court prejudicial to the rights of the mother upon which an assignment of error may be predicated; (2) lists two potential errors "that might arguably support the appeal," Anders at 744, 87 S. Ct. at 1400; (3) requests that this court review the record independently to determine whether the proceedings are free from prejudicial error and without infringement of mother's constitutional rights; (4) requests permission to withdraw as counsel for mother on the basis that the appeal is wholly frivolous; and (5) informs this court that counsel has diligently attempted to locate his client in order to serve her with a copy of both the brief and motion to withdraw by mailing it to mother at her last known address.
 {¶ 33} Having allowed mother sufficient time to respond, and no response having been received, we have accordingly examined the record and find no error prejudicial to mother's rights in the proceedings in the trial court. The motion of counsel for mother requesting to withdraw as counsel is granted, and the appeal in Case No. CA2007-04-024 is dismissed for the reason that it is wholly frivolous.
 {¶ 34} In Case No. CA2007-04-026, father's appeal, the judgment of permanent custody of D.D. to CCCS is affirmed.
 YOUNG, P.J., and POWELL, J., concur. *Page 1