[Cite as *In re K.C.*, 2012-Ohio-1350.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IN THE MATTER OF: | : | Patricia A. Delaney, P.J. |
| | : | William B. Hoffman, J. |
| K.C. | : | Julie A. Edwards, J. |
| E.C. | : | |
| | : | Case Nos. 11-CA-38 & 11-CA-41 |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Civil Appeal from Guernsey County
                                  Court of Common Pleas, Juvenile
                                  Division, Case No. 08-JC-00668

JUDGMENT:                         Affirmed

DATE OF JUDGMENT ENTRY:           March 26, 2012

APPEARANCES:

For Appellant M.C.                        For K.C.

CHARLES McKNIGHT                          WILLIAM NICHOLSON
121 West Eighth Street                    217 N. 8th Street
Cambridge, Ohio  43725                    Cambridge, Ohio  43725

For Appellant D.C.

MELISSA M. WILSON
1009 Steubenville Avenue
Cambridge, Ohio 43725

For Appellee

AMBER WOOTTEN
139 Courthouse Square
Cambridge, Ohio  43725

Guardian Ad Litem

DAVID B. BENNETT
126 N. 9th Street
Cambridge, Ohio  43725

For E.C.

MICHAEL GROH
919 Wheeling Avenue
Cambridge, Ohio  43725

*Edwards, J.*

{¶1} Appellants, D.C. and M.C., appeal from the November 15, 2011, Journal Entry of the Guernsey County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of K.C. and E.C. to appellee Guernsey County Children Services Board.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellants D.C. and M.C. are the biological parents of T.C. (DOB 2/21/93),[1] K.C. (DOB 6/8/97) and E.C. (DOB 3/22/99) On November 13, 2008, appellee Guernsey County Children Services Board (GCCSB) filed a complaint alleging that the three children were dependent, abused and/or neglected. An amended complaint was filed on December 19, 2008.

{¶3} At the adjudicatory hearing on January 14, 2009, appellants admitted that the children were dependent children and the trial court found the children to be dependent. At a hearing held on April 9, 2009, the trial court granted temporary custody of T.C. to appellee GCCSB and ordered that K.C. and E.C. remain in the custody of their parents with protective supervision by appellee GCCSB.

{¶4} On March 11, 2010, appellee GCCSB filed a Motion to Modify Dispositional Order, asking that T.C. be placed in a planned permanent living arrangement.

{¶5} On July 7, 2010, appellee GCCSB filed a motion alleging that K.C. and E.C. were abused and/or neglected children. On the same date, appellee filed a motion seeking emergency temporary custody of the two children. The motion for temporary custody was granted pursuant to a Journal Entry filed on the same day. Following a

---

[1] T.C. is not the subject of this appeal.

probable cause hearing, the trial court, as memorialized in a Journal Entry filed on July 13, 2010, found probable cause that K.C. and E.C. were dependent and/or abused.

{¶6}   Pursuant to a Journal Entry filed on August 18, 2010, the trial court granted appellee's motion requesting that T.C. be placed in a planned permanent living arrangement.

{¶7}   A hearing was held on September 28, 2010.  Via a Journal Entry filed on October 5, 2010, the trial court found K.C. and E.C. to be dependent children and ordered that they remain in the temporary custody of appellee GCCSB.

{¶8}   Thereafter, on March 10, 2011, appellee GCCSB filed a Motion for Permanent Custody of K.C. and E.C. A hearing on such motion commenced on October 11, 2011. The following testimony was adduced at the hearing.

{¶9}   Dr. Gary Wolfgang, a psychologist and clinical counselor, testified that he first met the family in this case in March of 2006. Dr. Wolfgang testified that basic behavioral issues such as not interrupting one's parents need to be addressed and that appellants "had difficulty with even these kinds of simple interventions." Transcript at 18. When appellants were referred to Dr. Wolfgang again in October of 2010, appellant D.C. declined to take part in the evaluation process and no family evaluation occurred in 2010. Based on his assessment of appellant M.C., Dr. Wolfgang diagnosed her with bipolar disorder and borderline intellectual functioning. When asking about appellant M.C.'s parenting difficulties, he testified, in relevant part, as follows:

{¶10}   "Q. Okay.  What - - what difficulties did you address that you thought she might have in parenting her children?

**{¶11}** "A. Well, she has trouble at every stage.  She has trouble in identifying the nature of the problem that may be going on.  She has trouble generating a range of solutions to any given problem, and then she has trouble in having confidence in implementing any chosen intervention and trouble with consistency and follow-through when she has chosen intervention.

**{¶12}** "She - - I observed her even in 2009 and she admitted as much again in 2010 that, at times, she was challenged in responding to the point that she more or less threw her hands up in the air.  She was without options as to how to proceed." Transcript at 22.

**{¶13}** According to Dr. Wolfgang, appellants had received services from every agency in the community, including parenting services. He testified that appellant M.C.'s prognosis with respect to making changes in her parenting was poor because, after years of efforts to do so, appellant M.C. made little progress and because "the issues were so basic and such a basic level and yet difficulties were---were being evidenced." Transcript at 24-25.

**{¶14}** On cross-examination, Dr. Wolfgang testified that the children were very difficult to parent because they were overactive, fought with each other, defied their parents, and very, very talkative.   Based on his 2009 evaluation and his extensive record review  that he conducted pursuant to such evaluation, Dr.Wolfgang determined that the two children would be difficult for anyone to raise.

**{¶15}** Patrick Reineccius, a service support supervisor with the Board of Developmental Disability, testified that he had worked with appellant D.C. on and off since 2005 or early 2006 until 2009. He testified that he helped appellant D.C. develop a

plan to gain employment and that appellant D.C. was employed by Dunning Motors early on. Reineccius testified that part of his job was to make sure that appellant D.C. took his medications consistently and that he was not able to remedy such problem. According to Reineccius, appellants became angry with the County Board and did not want the Board's services and appellant D.C. fired him as his service coordinator a couple of times.

{¶16} Reineccius testified that, on January 11, 2007, he was at appellant's house dealing with issues that appellant was having with showing up to work. Reineccius testified that in 2009, his services with appellant D.C. terminated and that appellant D.M. moved out of county and was referred to Muskingum County DD Services.

{¶17} On cross-examination, Reineccius testified that appellant D.C. was not consistently able to attend work. He testified that Dunning Motors called about appellant D.C.'s attendance. After appellant D.C. was either fired or laid off at Dunning Motors, he worked for Guernsey Industries, a workshop.

{¶18} The next witness to testify was Karen Yanico, who was a social worker at Cambridge City Schools. Yanico testified that she worked with both K.C. and E.C. from the time they entered school and provided counseling. The following testimony was adduced when she was asked what type of things she addressed in counseling:

{¶19} "A. Oh, social skills, how to behave in the classroom. I would process a lot of things. They would come to school very, at times, worked up about some sort of an event that occurred at the home or a conflict between the girls and home or a conflict somewhere within the family and just sort of diffusing. I did a lot of diffusing and helping

them to get ready to - - to get back to class because ultimately that's the school's goal is that they're there to learn." Transcript at 77.

**{¶20}** Yanico testified that both appellants came to meetings and showed interest in her involvement, and that she made recommendations to them to remain involved in their own individual counseling, to not be as reactive at home, and to utilize community services. According to Yanico, appellants made progress but "required a lot of support to keep that going for a long period of time" and that there would be improvements followed by slip backs. Transcript at 78. She testified that she was addressing the same issues over and over again with appellants and the children.

**{¶21}** On cross-examination, Yanico testified that appellants would do okay for a couple of months and then slip back and that it was a pattern that she noticed. When asked what she believed caused the pattern, she testified that appellants had mental health issues and that it was hard for them to manage without support. In her opinion, slip backs were likely to reoccur.

**{¶22}** Testimony was adduced at the hearing that individualized education plans had been developed for the children. The plans, which were developed by a team that included a psychologist, stated that the children did not engage in behavior that impeded their learning or the learning of others. Yanico testified that she disagreed with such statement. She testified that with respect to K.C., there were times when K.C. was unstable or there was chaos in the home that would affect K.C.'s learning. According to Yanico, the children did better when they were in foster care.

**{¶23}** Penny Shepherd testified that she was a clinical counselor with Cambridge Counseling Center and that she had worked with K.C. since 2009.

Shepherd, who usually saw K.C. on a weekly basis, testified that her treatment goals for K.C. were to improve behaviors at home, school and community, to improve hygiene and social skills and to work on personal boundaries. She testified that they did not work on hygiene anymore because K.C. had improved. According to Shepherd, K.C. is aware of the permanency issue and is confused about the same. On some days, K.C. wanted to go home while on other days, she did not know what she wanted. . Shepherd further testified that K.C. was better able to maintain change while in foster care. When asked her opinion, Shepherd testified that she did not believe that K.C. should be returned home because she would decline. She also testified that any improvement that K.C. made while with appellants was slight and that K.C., who had been diagnosed with attention deficit disorder, depression and oppositional behaviors, would then regress.

{¶24} Shepherd testified that K.C. loved the Smiths,[2] her foster family since, 2009, and referred to them as her parents. Shepherd indicated that although K.C. wavered on the issue of foster care because she did not want to hurt her parents' feelings, K.C. thought that she would be better off in foster care.

{¶25} Elissa Mallett, the ongoing caseworker from appellee GCCSB, testified that the current case was opened in 2007. She testified that she had been the ongoing caseworker since March of 2010 and was involved with the family from 2005 until April of 2007 also. Mallett testified that appellant M.C.s case plan required her to continue participating in mental health services and follow any recommendations, to have visitation with the children, and to complete parenting classes. She testified that appellant M.C. received mental health services from a number of agencies, had completed the family dynamics assessment that was requested and had completed

---

[2] Name of foster family changed for this opinion.

parenting classes. Appellant M.C. also attended visitation on a regular basis. She further testified that appellant D.C's case plan was basically the same, but that his also included services from the Board of Developmental Disabilities. Testimony was adduced that both appellants were complying with their respective case plans and received benefits through Social Security.

**{¶26}** Mallett testified that the children had been placed back in foster care with the Smiths July 6, 2010, and that they previously had been placed with the Smiths from November 16, 2005 through November 7, 2006. From November of 2006 until July of 2010, the children were with appellants.

**{¶27}** Mallett testified that the children did well in foster care. She testified that E.C. did not have any behavioral issues, but that K.C. had a lot of issues that had decreased. Mallett further testified that the agency had been involved with the family on and off since 1993 and had contact with the family at least once a year. Since 2003, the agency had been involved with the family all but 32 days. Mallett testified that the children were with their paternal grandmother from December 22, 2003 through July 18, 2005, then went back home. She testified that they were then removed and placed in foster care in November 16, 2005 and remained in foster care until November 7, 2006 before being returned home. On July 6, 2010, the children were removed again. During the entire eight years, appellants' parenting skills have been an issue.

**{¶28}** Mallett testified that numerous community resources or agencies had been involved with the family and that no additional community resources were available. The following is an excerpt from her testimony*:*

**{¶29}** "Q. And have all of these agencies - - have they all been involved at the same time or at separate times throughout the duration of this case?

**{¶30}** "A. They have not as a whole all been involved at the same time. However, a lot of the community agencies have overlapped as far as duration of involvement.

**{¶31}** "Q. At this point are there any additional community resources that are available to this family?

**{¶32}** "A. None that I or anyone in our agency are aware of.

**{¶33}** "Q. Since 2003, how many instances of abuse or neglect have been substantiated?

**{¶34}** "A. Since 2003, there were four physical abuse indicated or substantiated, three neglect indicated or substantiated, and three sexual abuse indicated, and the family had seven ongoing cases.

**{¶35}** "Q. Over the course of eight years, what have been the major issues that have been addressed with this family?

**{¶36}** "A. Parenting concerns, inconsistency in follow-through with parenting. [M.C.] and [D.C.] are able to make changes and sustain those changes for short periods of time. But the - - looking back through agency history, the cycle just continues.

**{¶37}** "There have (sic) been an issue of housing concerns. Those currently are not an issue. That is one area that they've improved in and appeared to have been able to sustain the cleanliness of the home. Working on interactions between family members with them, those sorts of things." Transcript at 138-139.

{¶38} She further testified that appellants were able to maintain progress as long as intensive services were in place, but that once the services were removed, appellants had problems and Children's Services had to become involved again. She testified that the foster family was willing to provide foster care as long as necessary and that she did not believe that the children could be reunited with appellants within a reasonable time due to "the historical involvement and the parents not being able to maintain changes for more than a few months,…" Transcript at 143. In her opinion, it was in the children's best interest for the agency to be granted permanent custody. She testified that the children were in need of a legal secure placement and that bouncing back and forth between parents and foster care was not good for them.

{¶39} Stephanie Lobby of the Guernsey County Family and Children First Council testified that she had worked with the family from March of 2007 through September of 2009. She testified that the concerns in 2007 included concerns that appellants were not able to follow up with suggestions. She further testified that appellants were able to implement the parenting skills taught to them for short periods of time if they had support from others. According to Lobby, there would be improvement for a few months and then a crisis would occur and the family would take a step back. She further testified that they had someone in appellants' home four out of five days and that with that assistance, appellants were not able to maintain progress for a significant period of time. When asked, she testified that based on the family's patterns of slip backs, those patterns would continue.

{¶40} Kim Felder, a family support specialist with Guernsey County Children Services, testified that she supervised visits between appellants and the children that

occurred at the agency once a week for two hours. She testified that the visits were supervised to make sure that everyone in the family remained safe because they had heated arguments and the children had behavioral issues. According to Felder, at times the visits did not go well and there was a lot of arguing. She further testified that, except for approximately five visits, she did not have to step in and assist appellants with parenting.

{¶41} At the hearing, David Brian Bennett, the Guardian Ad Litem, testified that he recommended that permanent custody be denied and that gradual reunification take place between appellants and the children. He testified that he believed that appellant M.C. had made great strides in the last year and a half and that she seemed "to have learned things from her counseling sessions that will assist her in raising her children." Transcript at 365. He testified that he believed that appellants should be given an opportunity to see if they could function.

{¶42} Cheryl Gadd, a Court Appointed Special Advocate for Children ("CASA"), testified that she recommend that permanent custody be granted because of the cycle testified to. She testified that she was concerned that the cycle would continue if the children were returned home and that appellant M.C. would not be able to maintain the progress that she had made through counseling if the children were returned home. Gadd, who had been involved with the family for eight years, testified that the children were bonded with the Smiths and had improved while in their care.

{¶43} The trial court conducted an in camera examination of both children. The children indicated to the trial court that they wished to remain in foster care.

{¶44} Pursuant to a Journal Entry filed on November 15, 2011, the trial court granted the motion for permanent custody and terminated appellants' parental rights. The trial court, in its Journal Entry, found that the children needed a legally secure permanent placement and that the same could not be achieved without a grant of permanent custody and that reasonable efforts were made to keep the children in their own home.

{¶45} Appellant D.C. filed a Notice of Appeal of the trial court's November 15, 2011 Journal Entry. Such case was assigned Case No. 11 CA 38. Appellant D.C. now raises the following assignments of error on appeal:

{¶46} "I. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED AND THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH THEIR PARENTS WITHIN A REASONABLE TIME.

{¶47} "II. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE GUERNSEY COUNTY CHILDREN SERVICES MADE THE REQUISITE EFFORTS TO PREVENT REMOVAL OF THE CHILDREN FROM THEIR HOME OR MADE IT POSSIBLE FOR THE CHILDREN TO RETURN SAFELY HOME."

{¶48} Appellant M.C. filed a Notice of Appeal of the trial court's November 15, 2011 Journal Entry. Such case was assigned Case No. 11 CA 41. Appellant M.C. now raises the following assignments of error on appeal:

**{¶49}** "I. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED AND THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH THEIR PARENTS WITHIN A REASONABLE TIME.

**{¶50}** "II. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE GUERNSEY COUNTY CHILDREN SERVICES MADE THE REQUISITE EFFORTS TO PREVENT REMOVAL OF THE CHILDREN FROM THEIR HOME OR MADE IT POSSIBLE FOR THE CHILDREN TO RETURN SAFELY HOME.

**{¶51}** "III. THE TRIAL COURT VIOLATED THE PARENTS RIGHT TO DUE PROCESS BY IMPROPERLY CONSIDERING THE RECOMMENDATION OF THE COURT APPOINTED SPECIAL ADVOCATE (CASA) OVER THE GUARDIAN RECOMMENDATION OF THE GUARDIAN AD LITEM."

**{¶52}** For purposes of judicial economy, we shall address the two cases together.

ASSIGNMENTS I, II (Case No. 11 CA 38) and

ASSIGNMENTS I, II AND III (CASE NO. 11 CA 41)

**{¶53}** Appellants, in their assignments of error, argue that the trial court erred in finding that appellee showed by clear and convincing evidence that appellants' parental rights should be terminated and that the children could not or should not be placed with their parents within a reasonable time. Appellants further contend that the trial court erred in holding that appellee made the requisite efforts to prevent removal of the

children from the home or made it possible for the children to return safely home. Finally, appellant M.C. argues that the trial court erred by improperly considering the recommendation of the Court Appointed Special Advocate over that of the Guardian Ad Litem.

**{¶54}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶55}** In the case sub judice, the trial court relied, in part, on R.C. 2151.414(B)(2), which states as follows:

**{¶56}** "With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest."

{¶57} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. 2151.414(E)(1).

{¶58} While appellants maintain that the trial court erred in finding that the children could not or should not be placed with their parents within a reasonable time, we disagree. We note that there was extensive testimony that, while appellants utilized the numerous and continuous services that were provided to them over an extended period of time and had consistently worked on their case plans, they were unable to maintain any progress that they had made for a significant period of time and regressed once services were removed or limited. As a result, the children were removed from appellants' home on more than one occasion and placed in foster care. As noted by appellee, "testimony was presented that there was a chronic cycle of regression and inability to maintain change on the part of the parents." Testimony was adduced that

GCCSB had been actively involved with the two children in this family for all but 32 days since 2003. As the trial court noted in its decision "[t]he problem with the parents and their counseling is that the lessons learned are not effective over a period of time."

**{¶59}** Appellants also argue that the trial court's finding that it was in the children's best interest for permanent custody to be granted was against the manifest weight of the evidence.

**{¶60}** In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

**{¶61}** "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶62}** "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶63}** "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

**{¶64}** "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶65}** "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶66}** Testimony was adduced that the children were doing well in foster care and did better in their foster home than with appellants. Both children told the trial court during an in camera interview that they wished to remain in foster care due to a need for stability. Furthermore, the children had been in the temporary custody of the agency since July of 2010, and had previously been in foster care. Testimony was adduced at the hearing that they needed a legally secure permanent placement and that this could not be achieved without a grant of permanent custody. As is stated above, Ellissa Mallett testified that the children were in need of a legal secure placement and that bouncing back and forth between parents and foster care was not good for them.

**{¶67}** Appellants, in their respective briefs, further argue that the trial court erred in determining that the agency made the requisite efforts to prevent removal of the children from their home or made it possible for the children to return safely home.

**{¶68}** Pursuant to R.C. 2151.419, the agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. R.C. 2151.419 is generally not applicable to permanent custody proceedings. o*In re C.F.,* 113 Ohio St.3d 73, 81, 2007-Ohio-1104, 862 N.E.2d 816. Furthermore, we find the agency did make reasonable efforts. As is stated above in detail, appellants were provided with numerous services over an extended period of time and there was testimony that no more services were available. Appellants had been provided with services from Head Start, Cambridge

Counseling Center, Six County, Inc., People to People, and Thompkins Child and Adolescent Services, among other agencies.

**{¶69}** Finally, appellant M.C., in her brief, argues that the trial court violated her right to due process by considering the recommendation of the Court Appointed Special Advocate over that of the Guardian Ad Litem. While the CASA recommended that permanent custody be granted, the Guardian Ad Litem recommended that the motion for permanent custody be denied and that gradual reunification occur.

**{¶70}** However, there is no evidence that the trial court considered the recommendation of the CASA over that of the Guardian Ad Litem. Rather, it appears that the trial court considered the evidence in its entirety. Based on the testimony as a whole, we find that trial court did not err in granting the motion for permanent custody.

**{¶71}** Based on the foregoing, the assignments of error in Case No. 11 CA 38 and 11 CA 41 are overruled.

{¶72} Accordingly, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.

By: Edwards, J.

Delaney, P.J. and

Hoffman, J. concur

_____

_____

_____

JUDGES

JAE/d0309

[Cite as *In re K.C.*, 2012-Ohio-1350.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| K.C. | : | |
| E.C. | : | |
| | : | |
| | : | |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | |
| | : | CASE NOS. 11-CA-38 & 11-CA-41 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellants.

_____

_____

_____

JUDGES