[Cite as *In re M.H.*, 2014-Ohio-5478.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.H.
    R.H.

C.A. Nos.     27313
               27317

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 12 05 0319
               DN 12 05 0320

DECISION AND JOURNAL ENTRY

Dated: December 15, 2014

---

CARR, Presiding Judge.

**{¶1}** Appellants, Priscilla B. ("Mother") and M.H. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the natural parents of M.H., born December 17, 2005, and R.H., born February 26, 2008. The children were removed from the parents' custody during May 2012, because their home was filthy and infested with bugs. Walls and ceilings in the home were also collapsing, the roof leaked, and electrical wires were exposed in some areas. The parents later agreed to an adjudication of dependency.

**{¶3}** Throughout this case, the reunification goals for both parents were to: (1) "attain clean, safe, stable, independent housing, with functioning utilities free of any infestations [,]" and (2) "demonstrate knowledge of appropriate parenting skills, including * * * how to provide a safe environment for the children, the knowledge and ability to meet the children's basic and medical needs, and age appropriate discipline techniques."

**{¶4}** The underlying and ongoing problems in this case stemmed from the parents' cognitive limitations. According to their parenting assessments, Mother had an IQ of 75. Father's IQ was slightly lower and he also had physical disabilities, both of which had resulted from complications during his birth. The psychologist who performed the assessment observed that neither parent demonstrated any insight into the reasons for the children's removal from the home. He opined that they would never be able to parent their children without extensive supervision in their home due to their cognitive impairments.

**{¶5}** Nevertheless, CSB connected the parents with service providers who attempted to help them improve their parenting skills and insight into the needs of their children. Although the parents were cooperative with CSB and most of their service providers, they made little progress during the case toward developing the skills they needed to provide their children with a suitable home.

**{¶6}** CSB moved for permanent custody during October 2013. The parents alternatively moved for an extension of temporary custody or for the children to be placed in the legal custody of a relative. Shortly after the motion for permanent custody was filed, the parents relocated to a three-bedroom, government-subsidized apartment. The caseworker visited that home and, although she saw two roaches in the home during one visit, the home was exterminated and bugs were no longer a problem.

{¶7}    At the hearing on the alternate dispositional motions, it was not disputed that the parents tried to comply with the requirements of the case plan, including completing two sets of parenting classes at their own expense, obtaining suitable housing, and regularly visiting their children, who were always happy to see them.  All witnesses agreed that the parents and children were bonded.

{¶8}    On the other hand, the trial court also heard undisputed testimony that, despite all of their case planning efforts, the parents remained unable to meet the children's needs because of their cognitive limitations.  Numerous witnesses testified that, despite their cooperation in completing two sets of parenting classes,  the parents did not seem to know how to implement what they had been taught.

{¶9}    The trial court ultimately found that both children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests.  Therefore, it terminated parental rights and placed the children in the permanent custody of CSB.

{¶10}  Mother and Father separately appealed and their appeals were later consolidated. After an initial review of the record, this Court questioned whether CSB had exerted reasonable reunification efforts to reunify the family prior to moving for permanent custody.  Consequently, this Court requested that the parties brief that issue, which was not raised in the trial court. Based on the specific arguments briefed by the parties, and because the trial court had no reason to address the reasonableness of CSB's reunification efforts at the permanent custody hearing, *see In re C.F.*, 113 Ohio St.3d 73, syllabus (2006), this Court declines to address the supplemental issue and will instead confine its review to the parties' original briefs.

II.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT'S DECISION TO GRANT THE STATE'S MOTION FOR PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE, AND THAT THE GRANT OF PERMANENT CUSTODY WAS SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Because Mother and Father both challenge the weight of the evidence supporting the trial court's decision, we will address their assignments of error together. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody to a public children services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶12} The trial court found that the first prong of the test was satisfied because both children had been in the temporary custody of CSB for more than 12 of the prior 22 months. The parents do not dispute that finding but instead contest the trial court's finding that permanent custody was in the children's best interests.

{¶13} When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider all the relevant factors, including those enumerated in

R.C. 2151.414(D): the interaction and interrelationships of the children, their wishes, their custodial history, and their need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶14} Although both parents visited the children regularly and the children were always excited and happy to see them, the visits never progressed beyond supervised visitation. The children's counselor, who supervised one of the visits, was concerned about the lack of interaction between the parents and children. She testified that she needed to prompt the parents to interact with M.H. and R.H. The parents never began counseling with the children because they had failed to consistently attend their own, individual counseling sessions.

{¶15} During this case, Mother and Father completed two sets of parenting classes. After the first set of general parenting classes, CSB observed that they were not able to implement what they had learned. Their second set of classes was designed to address some of their specific parenting problems, such as hygiene, discipline, nutrition, anger management, and school readiness. A witness who had instructed the parents testified that Father's participation during the classes was not good because he often fell asleep. Mother tended to argue about what they were teaching her. In the end, after completing the second set of classes, the instructor concluded that the parents had not learned what they needed to know to be able to parent their children.

{¶16} CSB remained concerned that the parents continued to lack an ability to make appropriate parenting choices for their children. For example, Mother had informed the

caseworker that she had recently reestablished a relationship with her own father, who is a convicted sex offender. Despite his sex offender status, Mother seemed to believe that he would be an appropriate person to help her care for her children.

{¶17} Several other witnesses similarly testified that Mother and Father clearly loved their children and wanted to be able to provide them with a suitable home, but they were unable to do so. Witnesses who had observed the parents interact with their children testified that they continually needed to redirect the parents to correct their inattention to their children or inappropriate behavior.

{¶18} When the children came into CSB care, each had been exposed to ongoing and extreme insect infestation, as well as other hazards and potential neglect in their home. R.H. also suffered from delays in her expressive speech and fine motor skills. Each child had excessive fears of insects, which caused "destructive sleep" and even caused them to be fearful while awake. Their counselor explained that M.H. would hear buzzing sounds and have terrible fears of being stung or bitten. Through the consistency, care, and attention that they had received while in foster care, each child was demonstrating decreased fears, improved behavior, and developmental and academic improvements. M.H. told his counselor that he felt safe in his current foster home.

{¶19} There was evidence before the court that the children loved their parents and wanted to be reunited with them. Closer to the time of the hearing, however, M.H. told the guardian ad litem that he wanted to spend one day with his parents and one day with the foster parents. The children were bonded with each other, with their parents, and with their current foster parents. The foster parents were interested in adopting the children and had expressed a willingness to allow the parents to continue visiting the children.

{¶20} The guardian ad litem opined that permanent custody was in the children's best interests. As several witnesses had already explained, the parents did not interact appropriately with their children and failed to demonstrate any insight into their parenting problems. The guardian ad litem was particularly concerned that, after almost two years of case planning efforts, the parents still failed to recognize that there was anything wrong with their prior, bug-infested and hazard-laden home. She opined that, no matter how hard they try, these parents will not be capable of providing their children with a suitable home.

{¶21} M.H. and R.H. spent the early years of their lives living with their parents where their need for a safe and stable home was not consistently met. Since their removal from their parents' home nearly two years before the permanent custody hearing, the children's needs were being met on a consistent basis, they were engaged in regular counseling, and they were overcoming their fears, behavioral problems, and developmental delays. During this time, however, they had lived in three different temporary placements and were in need of a legally secure permanent home.

{¶22} Mother and Father were not able to provide the children with a suitable permanent home because the parents lacked the ongoing assistance and supervision that they would need to safely parent the children. Although they qualified for a few hours per week of community-based assistance, the evidence demonstrated that these parents needed much more extensive help to parent their children. Their only family support system was a maternal great-grandmother, who had dementia. CSB had considered several relatives to take legal custody of the children but were unable to find any suitable relative placement for the children. A second cousin testified at the hearing that she would be willing to help with the children, but she had not seen the children throughout this case and had no bond with them.

{¶23} Consequently, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing the children in the permanent custody of CSB and that such a disposition was in the children's best interests. The parents' assignments of error are overruled.

III.

{¶24} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.


DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
<u>CONCUR</u>

<u>APPEARANCES:</u>

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

GINA D'AURELIO, Attorney at Law, for Appellee.

LINDA BENNETT, Guardian ad litem.