[Cite as *In re R.S.*, 2014-Ohio-5815.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re R.S.

Court of Appeals No. L-14-1156

Trial Court No. JC 13236596

**DECISION AND JUDGMENT**

Decided:  December 31, 2014

* * * * *

James J. Popil, for appellant.

Dianne L. Keeler, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, A.S. ("mother"), appeals February 14 and July 8, 2014 judgments of the Juvenile Division of the Lucas County Court of Common Pleas in dependency and neglect proceedings brought by Lucas County Children Services ("LCCS") with respect to her minor son, R.S.  In the February 14, 2014 judgment, the trial court determined that

R.S. is a dependent and neglected child. In the July 8, 2014 judgment, the court awarded permanent custody of R.S. to LCCS with LCCS to pursue adoptive placement with an interested relative and planning. The father of R.S. is J.S. Father has not filed an appeal of the trial court judgments.

**History with LCCS**

{¶ 2} R.S. was born in September 2009. LCCS has worked with the family since September 2009, to address mother's mental health issues, substance abuse, housing, and income. LCCS filed a complaint in dependency and neglect in February 2010, after mother's whereabouts became unknown and R.S. was hospitalized. In those proceedings, R.S. was found to be a dependent and neglected child and temporary custody of R.S. was awarded LCCS. In June 2011, father was awarded legal custody of R.S. and mother granted supervised visitation.

{¶ 3} Subsequently, mother had another child, V.S. The child has a different father than R.S. Separate dependency and neglect proceedings were brought by LCCS concerning V.S. In a December 3, 2013 judgment in that action, the Juvenile Division of the Lucas County Court of Common Pleas terminated mother's parental rights with respect to V.S., and awarded permanent custody of the child to LCCS for adoptive placement and planning. A certified copy of the December 3, 2013 judgment was admitted in evidence in this case.

{¶ 4} LCCS filed this action for dependency and neglect with respect to R.S. on November 12, 2013. The case proceeded to trial on January 29, February 4, March 28,

2.

May 27, and July 1 and 2, 2014. In its July 8, 2014 judgment, the trial court made findings under R.C. 2151.414(E) that R.S. could not be placed with either parent within a reasonable period of time or should not be placed with the parents. The court also concluded that an award of permanent custody of R.S. to LCCS is in R.S.'s best interests. Pursuant to those findings, the court awarded permanent custody of R.S. to LCCS.

{¶ 5} A parent's right to raise his or her children is a fundamental right. *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. In cases involving termination of parental rights, the procedures announced in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) apply, where appointed counsel concludes that an appeal is wholly without merit and seeks leave of court to withdraw as counsel on appeal. *Morris v. Lucas Cty. Children Servs. Bd.*, 49 Ohio App.3d 86, 87, 550 N.E.2d 980 (6th Dist.1989).

{¶ 6} Mother is represented by court-appointed counsel in this appeal. Counsel has advised the court that he has reviewed the record of proceedings in the trial court and applicable law and has concluded that there are no issues of arguable merit for appeal. Counsel has filed an appellate brief under procedure set forth in *Anders* and filed a motion to withdraw as counsel. Counsel also provided mother with a copy of the brief and motion to withdraw and notified appellant of her right to raise her own assignments of error and to file her own appellate brief within 45 days. Mother has not filed her own appellate brief.

3.

**{¶ 7}** Counsel sets forth one potential assignment of error:

I. The trial court erred in granting appellee's motion for permanent custody as the prospective adoptive candidate is a paternal relative of the child and an award of legal custody is in the child's best interests.

**{¶ 8}** In the December 3, 2013 judgment that terminated parental rights with respect to mother's younger child, the trial court found that mother "has an ongoing problem with mental health and substance abuse. She has a pattern of engaging in services and then disappearing from treatment providers when she relapses into use of illicit substances. She was terminated from dual diagnosis services (mental health and drug treatment) at Unison in February 2013, but has not re-engaged."

**{¶ 9}** The court also found that "[t]he L.C.C.S. caseworker has worked with this mother since March 2010 * * *. The caseworker has worked continuously with the mother on issues of sobriety, mental health, housing and income, without success."

**{¶ 10}** Michelle Fournier, an LCCS caseworker who performs investigations for the agency, testified at trial concerning referrals to LCCS, made on November 6, 2013, concerning R.S.'s care and her investigation of them. Through her investigation, Fournier was able to confirm referrals indicating R.S. had resided with mother from September 1, 2013 until mother's eviction from her apartment in early November 2013, and that a week before eviction R.S. had been left alone in the residence for 12 hours, from 3:00 p.m. until 3:00 a.m.

4.

{¶ 11} Fournier contacted father (who held legal custody of the child) and set up a home visit. When the caseworker arrived at the home, the child was not present. Father stated that R.S. was with a relative. Father, however, would not provide information as to the child's whereabouts.

{¶ 12} Ultimately the caseworker found that R.S. was in mother's care. The caseworker testified that mother stated that "since the father received custody that she had * * * [R.S.] * * * in her care pretty much ongoing. That it was on occasion that he was actually with his father."

{¶ 13} Fournier also spoke with R.S., who stated that there was a time mother left him with her boyfriend (Leonard), who left him alone in the apartment. Mother acknowledged an incident where R.S. was left alone and added that somehow the boy ended up in the care of her mother.

{¶ 14} Fournier testified that the maternal grandmother had known mental health and substance abuse issues and that the parents were aware that R.S. was not to be placed in her care. LCCS also learned that R.S. was placed in the care of the maternal grandmother when mother was incarcerated in the summer of 2013, for almost two months.

{¶ 15} Angelica Miller, the ongoing caseworker for the family, also testified at trial. Miller testified that she has worked with the family since March 2010, and worked with mother to address mother's mental health and substance abuse, as well as her lack of stable housing. The caseworker testified that historically mother had been diagnosed

5.

with bipolar one disorder, cocaine dependence and marijuana dependence. At the time of filing suit, mother was not receiving mental health treatment. At that time, mother was also continuing to use marijuana, crack cocaine and alcohol.

{¶ 16} Mother's last substance abuse treatment was in December 2012. Mother did not successfully complete substance abuse treatment. She relapsed and did not seek further treatment. At the time suit was filed, mother was homeless, having been evicted from her apartment on November 1, 2013.

{¶ 17} At the time of trial, R.S. resided in a foster home. Caseworker Miller testified that mother visited R.S. only sporadically. The caseworker talked to mother concerning the issues that caused her to lose custody of V.S. Miller testified that mother knew what services she needed to pursue but never reengaged in the services.

{¶ 18} Father received custody of R.S. on November 12, 2013. Caseworker Miller testified that communication with father had been extremely sporadic. "He doesn't return my phone calls, and when I make attempts out to the home, if he's not there and I leave a note, he doesn't respond." The caseworker testified that father visited on 8 of 23 scheduled times, with two missed visits caused by the failure of the foster parents to appear. During the course of these proceedings, father took no action to have R.S. returned to his custody.

{¶ 19} Mother has a criminal history and has been incarcerated at different times. The record shows that mother was incarcerated twice at the Corrections Center of Northwest Ohio and once at the Lucas County jail. At the time of disposition she was

6.

serving a 180-day sentence with an expected release date of November 2014. She was also incarcerated in July and August 2013. Mother has a history of prostitution. She engaged in support services to refrain from prostitution in the past, but stopped attending the support group. Caseworker Miller testified that mother acknowledged in May 2014, that she continues to engage in prostitution.

{¶ 20} State exhibit Nos. 2, 3, and 4, admitted at trial, are certified records of Toledo Municipal Court of three criminal prosecutions of mother. In the first of these three cases, mother pled guilty to and was convicted of unauthorized use of property in violation of Toledo Municipal Code 545.08A, a fourth degree misdemeanor. On February 10, 2014, mother was sentenced to serve 30 days in the Corrections Center for Northwest Ohio ("CCNO"), suspended. Subsequently the court found a probation violation occurred and terminated probation.

{¶ 21} In the second case, mother pled no contest to attempt to commit an offense, a violation of R.C. 2923.02, and a first degree misdemeanor. Mother was found guilty and on May 28, 2014, sentenced to serve 180 days at CCNO.

{¶ 22} In the third case, mother pled no contest to a charge of petty theft, a violation of Toledo Municipal Code 545.05(A)(1), a first degree misdemeanor, and found guilty of the offense. On May 28, 2014, the court sentenced mother to serve 180 days in CCNO with the sentence suspended.

{¶ 23} The guardian ad litem of R.S., Alanna Paully, testified at trial and recommended that permanent custody of R.S. be awarded to LCCS. She testified that she

7.

believed mother would like to provide care for R.S. but is unable to do so because of her mental health, her substance abuse, lack of stable housing, legal problems, and prostitution. Paully testified that she believes father is able to care for R.S. but that he does not care to do so.

{¶ 24} Caseworker Miller testified that a relative is interested in caring for R.S. and LCCS placed the child in the care of a paternal second cousin on May 15, 2014. The relative desires to adopt R.S. LCCS conducted a home study and found the relative to be an acceptable parent. Miller testified that the placement has been going very well.

**Permanent Custody Procedure**

{¶ 25} In order to terminate parental rights and award permanent custody of a child to a children services agency, the juvenile court must conduct a two-part analysis under R.C. 2151.414(B)(1) and find by clear and convincing evidence:

> (1) that the child is abandoned, orphaned, has been in the temporary
>
> custody of the agency for at least 12 of the prior 22 months, or cannot be
>
> placed with either parent within a reasonable time or should not be placed
>
> with either parent, based on the analysis under R.C. 2151.414(E); and
>
> (2) that the grant of permanent custody to the agency is in the best interest
>
> of the child, based on an analysis under R.C. 2151.414(D). See R.C.
>
> 2151.414(B)(1) and 2151.414(B)(2). *In re R.V.*, 6th Dist. Lucas Nos.
>
> L-10-1278 and L-10-1301, 2011-Ohio-1837, ¶ 17.

8.

**{¶ 26}** Clear and convincing evidence is that "measure or degree of proof which * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 27}** A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re. A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶ 28}** The trial court found by clear and convincing evidence that the R.C. 2151.414(E)(4) factor exists as to both parents and additionally that factors 2151.414(E)(2), (11), and (13) also exist as to mother. The court considered the requirements of R.C. 2151.414(D)(1) and concluded that an award of permanent custody of R.S. to LCCS is in the best interests of the child.

**{¶ 29}** Factor R.C. 2151.414(E)(4) provides:

> The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

9.

{¶ 30} We conclude that competent credible evidence in the record supports the trial court findings by clear and convincing evidence that both parents failed to regularly support or communicate with R.S. and by their conduct demonstrated an unwillingness to provide an adequate permanent home for R.S., factor R.C. 2151.414(E)(4).

{¶ 31} Factor R.C. 2151.414(E)(2) provides:

Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.

{¶ 32} The evidence in the record demonstrates mother's long-standing need for treatment and support for mental illness and substance abuse. LCCS provided services for both. Mother has relapsed and continues to abuse crack cocaine and other substances. Mother stopped mental health treatment. Competent credible evidence in the record supports the trial court's determination, by clear and convincing evidence, that these conditions are so severe that they independently and together make mother unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the hearing on disposition in this case, factor R.C. 2151.414(E)(2).

10.

**{¶ 33}** Factor R.C. 2151.414(E)(11) provides:

The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

**{¶ 34}** Mother lost parental rights to her younger child, V.S., in November 2013. Mother did not testify at trial or present any evidence at trial to demonstrate by clear and convincing evidence that she can provide a legally permanent placement for R.S. and adequately care for the health, welfare, and safety of R.S. We find that competent, credible evidence in the record supports the trial court's determination by clear and convincing evidence of the existence of factor R.C. 2151.414(E)(11) in this case.

**{¶ 35}** Factor R.C. 2151.414(E)(13) provides:

The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

**{¶ 36}** The record demonstrates that mother has been convicted of a series of criminal offenses in 2013 and 2014 and repeatedly incarcerated as a result. We find

competent, credible evidence in the record supports the trial court finding of factor R.C. 2151.414(E)(13) that mother is repeatedly incarcerated and that the repeated incarceration prevents her from providing care for R.S.

{¶ 37} Pursuant to trial court findings of factors R.C. 2151.414(E)(4) as to both mother and father and, additionally, R.C. 2151.414(E)(2), (11), and (13) as to mother, we conclude that the trial court did not err in finding by clear and convincing evidence that R.S. "cannot or should not be returned to a parent within a reasonable period of time."

{¶ 38} We next turn to the trial court's determination that pursuant to R.C. 2151.414(D)(1), an award of permanent custody to LCCS is in the best interests of R.S. The trial court addressed R.C. 2151.414(D)(1) factors in its judgment:

> As for the best interest of the child, the Court has considered the requirements of O.R.C. 2151.414(D)(1) and finds that the child is doing well in out-of-home care and deserves a permanent, stable home that he cannot have without an award of permanent custody to L.C.C.S. The Court finds that there is no reason to expect these parents to make the necessary changes so they can parent in a reasonable time, but that the child can be adopted into an appropriate, permanent home, which both the L.C.C.S. caseworker and the child's guardian ad litem testified is in his best interest. The Court finds that the child is currently placed into a relative home and

12.

that the relative is interested in permanency through adoption. Given these considerations, the Court finds that an award of permanent custody to L.C.C.S. is in the child's best interest.

{¶ 39} We conclude that clear and convincing evidence supports the trial court's determination that an award of permanent custody of R.S. to LCCS is in the child's best interests under R.C. 2151.414(D)(1). The potential assignment of error is found not well-taken.

{¶ 40} We have conducted an independent review of the record, as required by *Anders*, and find no issue of arguable merit for appeal. Accordingly, we grant counsel's motion to withdraw. We affirm the judgment of the Juvenile Division of the Lucas County Court of Common Pleas. Pursuant to App.R. 24, we order appellant to pay the costs of this appeal. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

13.

Mark L. Pietrykowski, J. _____
                                                        JUDGE

Thomas J. Osowik, J. _____

Stephen A. Yarbrough, P.J. _____
CONCUR.                                                 JUDGE

_____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.