[Cite as *In re R.H.*, 2017-Ohio-4012.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

IN THE MATTER OF: R.H.                    :
                                          :
                                          :       Appellate Case No. 2016-CA-68
                                          :
                                          :       Trial Court Case No. 2015-1093
                                          :
                                          :       (Appeal from Domestic Relations
                                          :       Court-Juvenile Division)
                                          :
                                          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of May, 2017.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorney for Appellee-Clark County Dept. of Job & Family Services

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45502
    Attorney for Appellant-D.H.

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Appellant, D.H., appeals from the judgment of the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, terminating his parental rights and awarding permanent custody of his daughter, R.H. to the Clark County Department of Job and Family Services (CCDJFS). D.H. contends that the trial court erred in finding that CCDJFS made reasonable efforts to reunify the family. For the following reasons, we affirm the decision of the trial court.

## I. Facts and Procedural History

{¶ 2} B.H. and D.H. are the biological parents of R.H. who was born in 2003. CCDJFS became involved with the family when R.H. was a newborn. D.H. was sentenced to prison, and was incarcerated from 2004 until 2007. In 2008, the parents voluntarily ceded legal custody of the child to B.H.'s sister, D.R.

{¶ 3} B.H. and D.H. had another child, H.H., in 2010. CCDJFS became involved with B.H., D.H. and H.H. in 2011, and the child was adjudicated neglected. A case plan was created that required, in part, D.H. to engage in sexual offender evaluation and treatment. This requirement was set because D.H. had been convicted in 1996, 1997 and 2004 for gross sexual imposition involving several children aged three to 11.[1] D.H. failed to comply with this portion of the case plan. The agency filed a motion for permanent custody of H.H. Neither parent opposed the motion, and permanent custody was awarded to the agency in June 2013.

---

[1] He was also convicted of child endangering in 2011. He is currently registered as a Tier II sex offender.

{¶ 4} In 2015, CCDJFS again became involved with R.H. due to allegations of neglect and abuse by D.R. On October 26, 2015, the child was removed from D.R.'s custody and placed in the temporary custody of CCDJFS. The parents were given notice of the removal and of the temporary custody placement. B.H. and D.H. contacted CCDJFS in December 2015. They were subsequently added to the child's case plan. The parents had not exercised visitation nor paid child support during the time the child was in D.R.'s custody.[2]

{¶ 5} Of relevance to this appeal, the case plan required D.H. to continue in mental health counseling with his current therapist, participate in a sex offender evaluation and recommended treatment, and maintain stable housing and income.[3]

{¶ 6} The agency filed a motion for permanent custody on May 6, 2016. A hearing was conducted on September 26, 2016. At the hearing, Anika Pierce testified that she is the caseworker for the family. She testified that in April 2016 she presented D.H. with a list of potential sexual offender treatment programs because he stated that he had not been able to find a local provider for treatment. She testified that D.H. agreed to make an appointment with someone on the list. Pierce testified that in June 2016 D.H. informed her that all of the providers were too far away from his home in Springfield. She testified that she informed D.H. that the agency could arrange transportation for him if transportation was an issue. She also told him that he could see David Roush, a clinical psychologist and certified sexual offender treatment specialist located less than 30

---

[2] The parents have divorced since the removal of their second child from their home.

[3] It is undisputed that D.H. was aware that his current mental health therapist is not certified to manage sex offender cases, and he was aware of the need to retain a certified sex offender treatment provider in order to comply with the case plan.

minutes away in Fairborn, Ohio. Pierce testified that D.H. was resistant to sex offender treatment. Pierce further testified that D.H. engaged in therapy with his regular therapist a total of six times between February 2016 and June 6, 2016, and that he had not returned thereafter.

{¶ 7} D.H. testified that he saw his regular therapist eight to ten times, but that he was told by the therapist that the sessions could be put on hold. He testified that Pierce did not give him the list of sex offender treatment providers until June 2016. He testified that he called every provider on the list, but the providers were either too far away, or he was not eligible for the programs. Specifically, he testified that the providers were located in places such as Toledo, Cleveland and Akron, and that he is not able to travel more than thirty minutes away from his home in Springfield, Ohio due to back pain. He also testified that some of the providers on the list were penitentiaries that restricted service to inmates. D.H. testified that he attempted to call Pierce to inform her that he could not obtain sex offender treatment from the listed providers, but she would not answer his calls. He noted that when he was finally able to talk to her, he was informed about Roush. He testified that he immediately made an appointment, and that he met with Roush on July 14, 2016. According to D.H., Roush informed him that a treatment group was starting in late August. D.H. testified that he was waiting for, but did not receive, a letter from Roush regarding the start date for the group.

{¶ 8} Following the hearing, the trial court awarded permanent custody to the agency. The court found that the child could not be placed with either parent within a reasonable time and that the child should not be placed with either parent.

{¶ 9} D.H. appeals.

## II. The Trial Court Did Not Err By Awarding Permanent Custody To CCDJFS

**{¶ 10}** The sole assignment of error asserted by D.H. states:

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THE AGENCY HAD MADE REASONABLE EFFORTS TO REUNITE THE MINOR CHILD WITH HER FATHER.

**{¶ 11}** D.H. contends that CCDJFS failed to provide timely access to providers for sexual offender treatment, and thus, failed to make reasonable efforts at reunification. Thus, he argues that the trial court erred in awarding permanent custody to the agency.[4]

**{¶ 12}** R.C. 2151.414(B)(1)(a) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child, and that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. "Clear and convincing evidence is 'the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.' " *In re Abram*, 10th Dist. Franklin No. 04AP–220, 2004–Ohio–5435, ¶ 14, quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). Clear and convincing evidence does not mean the evidence must be clear and unequivocal, nor does it require proof beyond a reasonable doubt. *Id.*

---

[4] D.H. refers to R.C. 2151.419 when arguing that the agency must make reasonable efforts. However, that statute does not directly appy to this case as the proceeding was brought under R.C. 2151.413. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E. 2d 816, ¶ 41.

{¶ 13} R.C. 2151.414(E) provides that a trial court shall find a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, if the court finds, by clear and convincing evidence, that one or more of 16 enumerated factors exist.   Only one of the factors set forth in R.C. 2151.414(E) must be present to make a finding that the child should not be placed with the parents. *In re Smith*, 2d Dist. Miami No. 2001-CA-54, 2002 WL 538888, * 5 (Apr. 12, 2002).

{¶ 14} In this case, the trial court determined that two of the factors set forth in R.C. 2151.414(E) are applicable:   (1) Notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions; and   (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so.

{¶ 15} We begin with the first factor.   There is no dispute that D.H. is a sexual offender, and that his victims have been young children.   Further, there is no dispute that D.H. failed to comply with the sex offender treatment requirement set forth in the case plan.[5]   The only issue then, is whether, as D.H. claims, the agency failed to make reasonable efforts to assist him.

{¶ 16} "No one section of the Revised Code addresses the concept of reasonable efforts. * * * To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit."   *In re C.F.*, 113 Ohio

---

[5] D.H. contends that he engaged in sex offender treatment while in prison.   However, the record demonstrates that psychological evaluations performed after his release indicated the need for further, intensive treatment due to his risk for reoffending.

St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29.   For example, R.C. 2151.414(E)(1) refers to the reasonable case planning and diligent efforts by the agency.   *Id.*

**{¶ 17}** "Reasonable efforts are described as being a good faith effort which is 'an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.' " *In re Secrest*, 2d Dist. Montgomery No. 19377, 2002-Ohio-7096, ¶ 13, quoting *In re Cranford*, 2d Dist. Montgomery Nos. 17085 and 17105, 1998 WL 412454, * 4 (July 24, 1998), citing *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011 (12th Dist. 1992). "The issue is not whether [CCDJFS] could have done more, but whether it did enough to satisfy the 'reasonableness' standard under the statute." *Secrest*, ¶ 13, quoting *In re Smith*, 2d Dist. Miami No. 2001-CA-54, 2002 WL 538888, * 6 (Apr. 12, 2002).   Diligence has been defined as "steady, earnest, attentive, and energetic application and effort in a pursuit."   *In re House*, 12th Dist. Butler Nos. CA91-01-016, CA91-02-022, 1992 WL 35038, * 2 (Feb. 24, 1992), quoting *Webster's Third New International Dictionary* 633 (1981).

**{¶ 18}** D.H. was added to the case plan for R.H. in January 2016.   The plan contained a requirement for sex offender evaluation and treatment.   There is no dispute that D.H was aware of, and understood, this requirement.   The record supports a finding that the agency attempted to maintain communication with D.H., and that it conducted monthly team meetings.   There is competent, credible evidence in the record upon which the trial court could rely in concluding that the agency was not informed until April 2016 that D.H. was unable to find a local provider for sex offender treatment.   Although D.H. denied knowing that Roush, located nearby in Fairborn, could provide treatment, the evidence in this record shows that D.H. was evaluated by Roush in December 2012 in

connection with his son's case plan and that D.H. knew then that Roush was an appropriate sex offender treatment provider. The evidence further shows that D.H failed to follow up with the treatment recommended by Roush following the 2012 evaluation.

{¶ 19} Also, there is evidence that the caseworker gave D.H. a list of possible providers as early as April 16, 2016, approximately five months before the final hearing. D.H. did not make any appointment as required, claiming that he could not travel more than 30 minutes from his home due to back pain. However, he did not present any medical evidence to demonstrate that his travel was so limited. Upon hearing this complaint, the agency offered to arrange transportation for D.H. D.H. finally saw Roush in July 2016 for a short meeting during which D.H. informed Roush that he wanted to enroll in a sex offender therapy group. There is nothing in the record to demonstrate that D.H. followed up with an evaluation or any treatment. D.H. contends that Roush informed him that he could begin in a group session in August, and that he would receive a letter informing him about the group. However, there is no evidence in Roush's records to corroborate this claim.

{¶ 20} We conclude that clear and convincing evidence in this record supports the trial court's finding that the agency made reasonable and diligent efforts to assist D.H, in meeting his case plan requirements, and that he failed to comply for a period of six months.

{¶ 21} Further, the trial court made a finding under R.C. 2151.414(E)(4) that D.H. had demonstrated a lack of commitment toward the child. This conclusion, contrary to D.H.'s argument, does not require a finding that the agency made reasonable and diligent efforts. *In re Smith*, 2d Dist. Miami No. 2001-CA-54, 2002 WL 538888, * 5 (Apr. 12,

2002). We conclude that clear and convincing evidence in the record also supports the trial court's finding under this section. There is competent, credible evidence upon which the trial court could find that D.H. had virtually no contact with the child after she was removed from his custody in 2008.[6] Further, the record is devoid of any evidence to indicate that D.H. had any interest in regaining custody, or that he made any effort to regain custody at any time during the seven years that R.H. was in the custody of her aunt.

{¶ 22} Although not raised by D.H., we note that the trial court appropriately considered the best interest of R.H. R.C. 2151.414(D)(1) through (5) sets forth the following factors that a court must consider in determining the best interest of the child:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child;

(4) The child's need for a legally secure permanent placement;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 23} Of relevance hereto, the record shows that R.H. had no significant interaction with D.H. from 2008 until 2016 when D.H. contacted her via FaceBook despite

---

[6] There is evidence in the record that he saw the child for a few moments on a few occasions when he delivered pizza to the aunt's house while he worked for a pizza restaurant.

knowing that he was not supposed to have such contact. The child indicated interest in having contact with D.H., but only after D.H. made statements over FaceBook indicating that he would buy her things, that he has a pool, and that the child's mother had been unfaithful. The trial court interviewed the child, and determined that she "is at best confused as to what she wants" in regard to her parents. Further, the Guardian Ad Litem recommended that the trial court award permanent custody to the agency. As stated, the child has not been in the custody, or presence, of either parent for the past eight years, and is in need of a permanent placement in order to continue receiving help with her mental health conditions.

{¶ 24} We conclude that the trial court's determination that the factors set forth in R.C. 2151.414(E)(1) and (4) exist, and that an award of permanent custody to the agency is in the child's best interest, are well-supported by clear and convincing evidence. Accordingly, the sole assignment of error is overruled.

## III. Conclusion

{¶ 25} The sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Megan M. Farley
Samantha Berkhofer
Jenna Wasserman
Lisa Niles
Hon. Joseph N. Monnin