[Cite as *In re L.D.-C.*, 2017-Ohio-784.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: L.D.-C.

C.A. No.     16AP0072

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2015 JUV-C 000519

DECISION AND JOURNAL ENTRY

Dated: March 6, 2017

TEODOSIO, Judge.

{¶1}    Appellant, Takita D. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of L.D.-C., born October 15, 2014. Although Mother has three older children, those children were not parties to these proceedings. The father of L.D.-C. did not appeal from the trial court's judgment.

{¶3}    According to the allegations in CSB's complaint, L.D.-C. was removed from Mother's custody on May 8, 2015, pursuant to Juv.R. 6 because heroin and fentanyl were found in the child's diaper bag during a traffic stop of the vehicle in which Mother and the child were

riding as passengers. All adults in the vehicle were arrested and authorities were unable to locate local relatives to care for the child. CSB filed a dependency complaint the next day.

{¶4} The complaint further alleged that Mother had been investigated by a children services agency in Michigan because she tested positive for drugs when the child was born, but the Michigan agency had lost contact with Mother. Mother would later admit that she had a long history of children services cases in Michigan because of concerns about her drug use and failure to supervise her children. When this case began, it was unclear who had legal custody of Mother's older three children, but they were not in Ohio with Mother. Consequently, CSB did not become involved with those children.

{¶5} At the shelter care hearing the next day, Mother told the trial court that she did not reside in Wooster but had been staying with friends there. She explained that she previously had been staying with other friends in Michigan, but was planning to move in with the maternal grandmother in Georgia, where her three older children were then living. Mother admitted that she had no permanent residence at that time and that she was not sure where she would live if the court did not allow her to take L.D.-C. to Georgia with her.

{¶6} Mother later agreed that the trial court should adjudicate L.D.-C. a dependent child and place him in the temporary custody of CSB, and that the trial court should adopt the case plan as an order of the court. The case plan required Mother to obtain a substance abuse assessment and follow all drug testing and treatment recommendations; obtain and maintain stable income and housing; complete parenting classes; and develop and maintain a bond through regular contact with L.D.-C.

{¶7} During the first several months of this case, Mother remained in Wooster briefly, returned to Michigan, and then moved to Georgia, where she resided with the maternal

grandmother and her three older children. Mother completed a substance abuse assessment while she was in Georgia. The professional who evaluated Mother recommended that she complete an intensive outpatient treatment program to address her long-term use of marijuana and that she regularly provide urine samples for drug screening.

{¶8} Mother did not follow up with any drug treatment, nor did she submit to regular drug screening. In fact, Mother admitted that she continued to use marijuana regularly to deal with symptoms that she attributed to depression and anxiety. Mother did not obtain stable income or housing, as she moved between multiple locations in Michigan and Georgia during this case. Moreover, she failed to visit L.D.-C. on a regular basis.

{¶9} On April 6, 2016, CSB moved for permanent custody of L.D.-C. At the time of the review hearing shortly afterward, Mother informed the trial court that she had moved to a different address in Michigan and that she was attempting to comply with the reunification requirements of the case plan. The trial court continued the permanent custody hearing for several months to allow Mother more time to work on the case plan and to allow the guardian ad litem time to familiarize herself with the case.

{¶10} Following a hearing on August 31, 2016, the trial court terminated Mother's parental rights and placed L.D.-C. in the permanent custody of CSB. Mother appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE WAYNE COUNTY JUVENILE COURT ERRED WHEN IT FOUND THAT L.D.-C. COULD NOT OR SHOULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME.

{¶11} Mother's first assignment of error challenges the trial court's finding on the first prong of the permanent custody test. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶12} The trial court found that CSB satisfied the first prong of the permanent custody test because L.D.-C. could not be returned to Mother's custody within a reasonable time or should not be returned to her custody because Mother had failed to substantially remedy the conditions that caused L.D.-C. to be removed and remain placed outside her custody. R.C. 2151.414(E)(1).[1] That finding was fully supported by the record.

{¶13} In fact, Mother concedes that she did not complete the reunification requirements of the case plan. The evidence was undisputed that Mother failed to engage in substance abuse treatment, continued to regularly use marijuana to deal with her purported anxiety and depression, and failed to develop a close bond with L.D.-C. because she did not visit him regularly.

---

[1] Although the trial court made an alternative finding that R.C. 2151.414(E)(4) was satisfied because Mother had demonstrated a lack of commitment to the child, this Court confines its review to the trial court's finding under R.C. 2151.414(E)(1).

{¶14} Mother argues instead that it was difficult for her to engage in case plan services or visit L.D.-C. because she did not live in Ohio, but resided in Michigan with her three older children. To begin with, the record does not support Mother's suggestion that she had a permanent home in Michigan. She conceded at the beginning of this case that she had no permanent residence. She informed the court that she had been living with friends in Michigan and, when this case began, she was staying with friends in Wayne County. During this case, she changed residences several times, including going back to Michigan, then moving to Georgia, and then moving back to Michigan. Mother also lived at more than one location in both Michigan and Georgia.

{¶15} Furthermore, Mother's suggestion that her older children have always lived with her is also contradicted by the record. Because those children were not parties to this case or subject to the jurisdiction of the Wayne County Juvenile Court, the record includes little information about them. The record does reveal, however, that Mother's three older children were not with her while she was in Ohio for an extended stay. It is unclear where or with whom they were living at the beginning of this case, but Mother later informed the trial court that they were in Georgia with the maternal grandmother. By the time of the permanent custody hearing, Mother testified that the older children were again residing with her in Michigan. Those children had been involved in several juvenile cases in Michigan and it is not known whether Mother retained legal custody of them.

{¶16} Moreover, the crux of Mother's argument is that CSB failed to make reasonable reunification efforts in this case, but she did not raise this issue in the trial court, nor has she separately assigned it as error. At the permanent custody hearing, the trial court was not required to determine whether CSB had made reasonable efforts toward reunification, given that it had

made prior reasonable efforts findings and Mother did not dispute those findings. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re P.W.T.*, 9th Dist. Wayne No. 11CA0020, 2011-Ohio-5858, ¶ 11; *In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9-10. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE WAYNE COUNTY JUVENILE COURT ERRED BY GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF L.D.-C. WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} Although Mother's Statement of the Issues Presented asserts that the trial court should have extended temporary custody, Mother did not make such an argument to the trial court, nor has she developed that argument on appeal. *See* Loc.R. 7(B)(3) of the Ninth Appellate District. Mother's second assignment of error solely challenges the trial court's finding that permanent custody was in the best interest of L.D.-C. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶18} Mother's interaction with L.D.-C. during this case was limited to supervised visitation. While the young child lived outside her custody for more than one year, Mother visited him only 11 times. According to the caseworker, Mother had not seen L.D.-C. often enough to have a loving bond with him.

{¶19} On the other hand, L.D.-C. had been living in the same foster home since this case began when he was an infant. He was doing well in that home and had become closely bonded to the entire family.

{¶20} Because L.D.-C. was not yet two years old at the time of the permanent custody hearing, the guardian ad litem spoke on his behalf. She opined that permanent custody was in his best interest because Mother had a long history of using marijuana to treat her emotional problems, had been involved in several other children services cases for failing to supervise her older children, and had done little to address any of those problems in this case. She contrasted the lack of commitment that Mother demonstrated toward L.D.-C. with the loving care that he had been receiving in the foster home.

{¶21} By the time of the permanent custody hearing, L.D.-C. had been living outside Mother's custody with the same foster family for most of his life. Mother was involved with a children services agency in Michigan because L.D.-C. tested positive for THC when he was born. It is unclear from the record how long L.D.-C. was in Mother's custody before this case began.

{¶22} Because L.D.-C. had been living in temporary placements for most of his life, he was in need of a legally secure permanent placement. Mother was not able to provide him with a stable permanent home at that time and CSB had been unable to find a suitable relative who was willing and able to do so. CSB investigated several relatives, including a maternal cousin who lived in Michigan. The cousin expressed initial interest in providing a home for L.D.-C., but she did not allow the Michigan agency to complete a home study and later informed CSB that she no longer wanted to be considered as a possible placement for L.D.-C.

{¶23} Although Mother argues that the trial court should have placed L.D.-C. in the legal custody of his maternal grandmother, the trial court reasonably concluded that it was not in the best interest of the child to be placed with the grandmother. The day before the permanent custody hearing, Mother filed a motion to place L.D.-C. in the grandmother's legal custody, but she did not present any evidence to the trial court that the grandmother was willing or able to provide the child with a suitable permanent home. CSB presented evidence that, while the grandmother lived in Georgia, she was investigated by a children services agency there and was not approved for placement because of drug use by one of the adults living in the home. For reasons not explained on the record, the grandmother later moved to Mississippi and was seeking approval by a children services agency in that state but had not yet completed the process. The trial court also considered that the grandmother had not visited L.D.-C. during this case, had no relationship with him, and did not attend the permanent custody hearing to testify or express a desire to have custody of him.

{¶24} Consequently, the trial court reasonably concluded that a legally secure permanent placement would be achieved by placing L.D.-C. in the permanent custody of CSB. Given that all of the best interest factors weighed in favor of the trial court's decision, Mother's second assignment of error is overruled.

III.

{¶25} Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

9

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

MICHELLE FINK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and MELODY L. BRIAND, Assistant Prosecuting Attorney, for Appellee.